Judy CORRIGAN

v.

METHODIST HOSPITAL, Sanford
H. Davne, M.D. and Donald
Myers, M.D.

No. 94–CV–1478.

United States District Court,
E.D. Pennsylvania.

Jan. 11, 1995.

Joseph L. Messa, Jr., Thomas W. Sheridan, Giuliana F. Robertson, Mark W. Tanner, Ominsky, Welsh and Steinberg, P.C., Philadelphia, PA, for plaintiff.

Nancy A. Nolan, Kimberly A. Cummings, Post & Schell, P.C., Philadelphia, PA, for defendant Methodist Hosp.

Kevin H. Wright, Amalia V. Romanowicz, Wright, Young & McGilvery, P.C., Plymouth Meeting, PA, for defendant Sanford H. Davne, M.D.

Daniel F. Ryan, III, Christine A. Egan, O'Brien & Ryan, Plymouth Meeting, PA, for Donald Myers, M.D.

## MEMORANDUM

JOYNER, District Judge.

Defendant Donald Myers has filed five separate motions in limine with this Court. He addresses all of them in a single memorandum of law, as we resolve of them today. Myers seeks to exclude the following evidence:

1) any evidence regarding the regulatory status by the Food and Drug Administration of pedicle screws;

2) any expert testimony regarding lack of informed consent;

3) any evidence regarding an alleged financial tie between Myers and Acromed Corporation;

4) any expert testimony by plaintiff regarding the materiality of a risk and/or the ultimate determination of lack of informed consent; and

5) the testimony of Plaintiff's experts, Carl Larson, Ph.D and Harold Alexander, Ph.D, as to any issue involving negligence and lack of informed consent against Dr. Myers.

The facts of this case are well known to the parties and their counsel, as well as to all faithful readers of the Federal Supplement; they will not be repeated here.

1) *Evidence regarding the FDA regulatory status of pedicle screws.*

Myers argues that a medical device's regulatory status is not the type of information that a doctor is bound to give patients before receiving their informed consent. *Kaskie v. Wright,* 403 Pa.Super. 334, 589 A.2d 213, *app. denied,* 529 Pa. 634, 600 A.2d 954 (1991). Therefore, he argues, the evidence is irrelevant and should be excluded. We addressed this argument in our December 6, 1994 Memorandum and Order denying Davne's motion for partial summary judgment. Op. 869 F.Supp. 1202, 1207 & n. 3.

■ In that Memorandum and Order, we held that Corrigan had presented evidence indicating that the alleged FDA regulatory status of the VSP Screws "meant that they had not been proven to be safe and effective. Use of them in surgery, therefore, is a surgical risk that a jury could well find was material." *Id.* Here, we find that the VSP Screws could be relevant to an informed consent claim; therefore we do not exclude evidence as to their FDA regulatory status.

■ In addition, Myers argues that admission of the FDA regulatory status of the VSP Screws would unfairly prejudice him. The test for whether something is unfairly prejudicial under Federal Rule of Evidence 403 is whether it is likely to lead the jury to "misdecision" based on inflamed passions, confusion of issues or the like. As our Court has noted, "[a]ll evidence is inherently prejudicial; it is only unfair prejudice *substantially outweighing* probative value that permits exclusion of relevant evidence under Rule 403." *United States v. Scarfo,* 711 F.Supp. 1315, 1330 (E.D.Pa.1989), *aff'd,* 910 F.2d 1084 (1990) (emphasis added); John Henry Wigmore, *Evidence in Trials at Common Law* § 10a (1983).

In this case, one of the underlying issues in many of Corrigan's claims is whether the VSP Screws were deemed experimental by the FDA. Evidence on this matter is, therefore, relevant and probative. Myers has not presented evidence indicating that prejudice arising from this evidence substantially outweighs its probative value. Accordingly, we DENY this motion in limine.

2) *Expert testimony regarding lack of informed consent.*

Myers argues that Corrigan's experts have not established an informed consent claim

against him because they have not opined as to the probability of occurrence of the alleged risks. He argues that this an essential element of this claim and because it was not shown, Corrigan cannot bring it to the jury. Accordingly, he asserts, evidence relating to failure of informed consent should be excluded. In support of this argument, Myers cites Pennsylvania cases holding that evidence relating to the likelihood of a perceived risk occurring is essential to an informed consent claim.

■ It is true that the cited cases hold that the "trier of fact must be given information as to ... the likelihood that such risks will actually arise." *Festa v. Greenberg*, 354 Pa.Super. 346, 360, 511 A.2d 1371, 1378 (1986), *app. denied*, 515 Pa. 580, 527 A.2d 541 (1987); *Sagala v. Tavares*, 367 Pa.Super. 573, 578, 533 A.2d 165, 167 (1987), *app. denied*, 518 Pa. 626, 541 A.2d 1138 (1988); *Jozsa v. Hottenstein*, 364 Pa.Super. 469, 473, 528 A.2d 606, 608 (1987), *app. denied*, 518 Pa. 619, 541 A.2d 746 (1988). However, Pennsylvania courts have also held that *Festa* "does not hold that expert testimony must establish *all* [elements] before the question of whether there was an informed consent can go to the jury." *Id.* (emphasis added). We have held that Corrigan's experts have established the existence of a risk. This evidence is sufficient to send the claim to a jury, and so we do not exclude her experts' testimony on this issue.

Myers also argues that Corrigan's experts' testimony should be excluded because they have not established a causal link between the alleged failure of informed consent and her injuries. We addressed this issue in the December 6, 1994 Memorandum and Order referred to above. We held that Corrigan's experts had presented evidence supporting a causal link. Op. 869 F.Supp. at 1207. Accordingly, we do not exclude Corrigan's experts' testimony based on this argument and this motion in limine is DENIED.

3) *Evidence regarding an alleged financial tie between Myers and Acromed Corporation.*

■ Myers argues that any alleged financial tie between him and Acromed Corpo-

ration is irrelevant to an informed consent claim, and therefore, that the evidence should be excluded from the trial entirely. Under the doctrine of informed consent, a patient is entitled to be informed of all surgical risks faced in a medical procedure. In *Kaskie*, the Pennsylvania Superior Court held that a doctor's alcoholism was not a surgical risk, and therefore, the patient was not entitled to be informed of that fact. 403 Pa.Super. at 341, 589 A.2d at 216. We find that a financial tie between Myers and Acromed is of the same nature in this respect to a surgeon's alcoholism and therefore, Corrigan was not entitled to be informed of a financial tie before granting informed consent.

However, the alleged financial tie does have relevance in other areas of this litigation, in particular, the negligence claim against Myers. Accordingly, while we will exclude evidence of a financial tie used to support an informed consent claim, we will not exclude it when it is relevant. This motion in limine is therefore GRANTED in part and DENIED in part.

4) *Expert testimony regarding the materiality of a risk and/or the ultimate determination of lack of informed consent.*

■ Myers argues that the trier of fact is the appropriate entity to determine the materiality of a risk and determine whether Corrigan gave informed consent to the surgery. We and Corrigan agree. *Festa*, 354 Pa.Super. at 357, 511 A.2d at 1377. This conclusion, however, does not require us to exclude Corrigan's experts' testimony in general. Any objections to testimony at trial should be made at the time of the testimony, when this Court has an actual question to rule upon.

5) *Testimony of Carl Larson, Ph.D and Harold Alexander, Ph.D, as to any issue involving negligence and lack of informed consent against Dr. Myers.*

Finally, Myers argues that two of Corrigan's experts should be precluded from testifying on the subjects of negligence and informed consent because they are not medical doctors. He does not present any specific

caselaw supporting this proposition. In turn, Corrigan argues that the evidence should be admitted, because under the reasoning in *Owens v. Concrete Pipe & Prods. Co.,* 125 F.R.D. 113 (E.D.Pa.1989), courts today are more flexible in permitting non-medical doctor expert testimony on medical matters.

In general, whether expert testimony is permitted depends on whether the expert's knowledge is likely to assist the trier of fact to arrive at the truth. F.R.E. 702; *Hines v. Consolidated Rail Corp.,* 926 F.2d 262, 272–73 (3d Cir.1991); *Genty v. RTC,* 937 F.2d 899, 917 (3d Cir.1991). We find that *Owens* stands for the proposition that non-medical doctors can testify as to causation of illness if they have an expertise in that area. For example, in *Owens,* the experts in question were a chemist and a pharmacologist, both with considerable experience in toxicology. *Id.* at 114. Our Court permitted their testimony within the bounds of "their personal experience and their knowledge of the scientific literature." *Id.* at 115.

We find that Drs. Larson and Alexander have unique knowledge in the area of these medical devices. Their testimony is likely to assist the jury in arriving at the truth. We shall, therefore, admit their testimony within the scope of their personal experience, knowledge of the scientific literature and otherwise within the scope of F.R.E. 702. Myers is free, at trial, to attempt to discredit their opinions with the argument that their lack of medical training makes their opinions merit little weight. *Owens,* 125 F.R.D. at 115. Accordingly, this motion in limine is DENIED.