714 So.2d 652 (1998)
Jose L. ALVAREZ and Mirna M. Alvarez, Appellants,
v.
Richard C. SMITH and Matthews Orthopaedic Clinic, Appellees.
No. 97-1522.
District Court of Appeal of Florida, Fifth District.
July 31, 1998.
*653 Alberto E. Lugo-Janer, Windermere, for Appellants.
Marjorie M. Cain of Fuller, Johnson & Farrell, P.A., Tallahassee, for Appellees.
GOSHORN, Judge.
Appellants Jose and Mirna Alvarez appeal from a final judgment entered pursuant to an adverse jury verdict. Appellants' complaint alleged that during a medical operation metallic screws were implanted in Jose's spine in a procedure for which the screws had not been approved by the Food and Drug Administration (FDA) and which was classified by the FDA as "experimental or investigational." At issue is whether there was a duty to inform Appellants of the FDA status of the pedicle screws. Prior to trial, the lower court concluded that there was not and granted partial summary judgment for Appellees on this issue. We agree and affirm.
Initially, we observe that Appellees' admission concerning their prevailing professional standard of care cannot create an otherwise nonexistent legal duty. Appellants allege that Appellees "admitted" in their pleadings and deposition that they felt they owed such a duty, and that therefore they had a duty as a matter of law. However, we agree with Appellees that their "custom and practice" of providing information to patients does not in and of itself create an otherwise nonexistent legal duty. The determination of legal questions is for the court rather than the parties. Cf. Equitable Life Assur. Soc'y of U.S. v. MacGill, 551 F.2d 978, 983 (5th Cir.1977) (noting that "it is well settled that a court is not bound to accept as controlling stipulations as to questions of law"); Clark v. Munroe, 407 So.2d 1036, 1037 (Fla. 1st DCA 1981) ("The parties cannot by stipulation control questions of law.").
Regarding the FDA status, the majority of reported cases hold that as a matter of law doctors are not required to disclose the FDA status of pedicle screws because such status is not a medical risk of surgery. For example, in In re Orthopedic Bone Screw Products Liability Litigation, 1996 WL 107556 (E.D.Pa.1996), the defendant physicians had used pedicle screws in spinal fusion surgeries as in the instant case. Like Appellants here, the plaintiffs alleged that the defendants failed to inform them that the FDA had not approved the screws for use in the spine and that therefore the doctors should be liable under informed consent law. The court rejected the plaintiffs' argument and granted the doctors' motion for partial summary judgment as to FDA regulatory status, noting:
[A] physician is free to use a medical device for an off-label purpose, if, in the physician's medical judgment, he or she believes that use of the device will benefit the patient. Because the off-label use of a medical device is a matter of medical judgment, a physician may be subject to medical malpractice liability for the exercise of that judgment. That physician cannot, however, be held liable under the doctrine *654 of informed consent for failing to advise a patient that a particular device has been given an administrative or regulatory label by the FDA. The law of informed consent obligates a physician to advise a patient of the medical risks, benefits and alternatives directly related to the patient's operative procedure. The terms "Class III," "investigational," and "significant risk" device are terms adopted by the FDA for administrative or regulatory purposes and cannot be said to be risks of a particular surgical procedure.
1996 WL 107556 at *5. See also Weaver v. Reagen, 886 F.2d 194, 198 (8th Cir.1989) ("[T]he fact that FDA has not approved labeling of a drug for a particular use does not necessarily bear on those uses of the drug that are established within the medical and scientific community as medically appropriate."); Femrite v. Abbott Northwestern Hosp., 568 N.W.2d 535 (Minn.Ct.App.1997) (granting summary judgment for defendant hospital, finding that the use of the screws in the spine was lawful and did not violate the Food and Drug Act; there was no duty to inform the patient of the investigational nature of the screws because the regulations requiring such disclosure apply only in the context of an investigative study); Klein v. Biscup, 109 Ohio App.3d 855, 673 N.E.2d 225, 231 (1996) (granting summary judgment in favor of the defendant physicians on the issue of informed consent in a pedicle screw case regarding disclosure of FDA status, noting that "the FDA does not regulate the practice of medicine," "the decision whether to use a drug for an off-label purpose is a matter of medical judgment, not of regulatory approval," and "[o]ff-label use of a medical device is not a material risk inherently involved in a proposed therapy which a physician should disclose to a patient prior to the therapy").[1] However, other courts have declined to rule as a matter of law that FDA status need not be disclosed.[2]
No Florida court has ruled on the issue of whether disclosure of FDA status is required, although it has been noted that "`[o]nce a product has been approved for marketing, a physician may prescribe it for uses or in treatment regimens or patient populations that are not included in approved labeling.'" Jones v. Petland Orlando S., 622 *655 So.2d 1114, 1116 (Fla. 1st DCA 1993) (quoting Weaver v. Reagen). We agree with the majority of cases which hold that FDA status is not a "medical risk" and thus need not be disclosed in obtaining a patient's informed consent.
AFFIRMED.
GRIFFIN. C.J., and ANTOON, J., concur.
NOTES
[1] In addition to the cases cited in the text, numerous other courts have held that FDA status is not a risk that must be disclosed prior to surgery. See, e.g., Staudt v. Froedtert Mem'l Lutheran Hosp., 217 Wis.2d 773, 580 N.W.2d 361 (Ct.App. 1998); Wyttenhove v. Fairview Hosp. & Healthcare Servs., Case No. 95-14941, affirmed, 1997 WL 585813, *1 (Minn.Ct.App.1997); Connors v. Hepner, No. 95-C-113 (N.H. Superior Court 1996); Piazza v. Myers, No.1914 (Philadelphia County Court of Common Pleas 1992); see generally James M. Beck & Elizabeth D. Azari, FDA, Off-Label Use, and Informed Consent: Debunking Myths and Misconceptions, 53 Food & Drug LJ. 71 (1998) (discussing "misconceptions" "that off-label use is itself a `risk'" and "that all off-label treatment is ipso facto `investigational' or `experimental'"; collecting cases; and advocating against expanding informed consent laws to require disclosure of FDA status).
[2] In Corrigan v. Methodist Hospital, 869 F.Supp. 1202 (E.D.Pa.1994), the court held that an issue of fact remained for the jury regarding the doctor's disclosure to the patient of the investigational status of the bone screws. However, as noted by Beck and Azari, supra note 1, the Corrigan court's conclusion was expressly rejected in In re Orthopedic Bone Screw Products Liability Litigation, 1996 WL 107556 at *3. In Shadrick v. Centennial Medical Center, 1996 WL 591179, *7 (Tenn.Ct.App. Oct.11, 1996), a case which centered on the statute of limitations, the court found, "Under the state of the record before us, there is a disputed issue of material fact as to whether the standard of care in Nashville, Tennessee in 1990 required a disclosure of the lack of FDA approval and the experimental nature of the use of pedicle screws." On appeal, the Supreme Court of Tennessee affirmed, noting that "[t]he evidence from which the jury could infer concealment consisted of Dr. Coker's silence regarding the risks and complications associated with the use of pedicle screws in the spine and the failure to disclose their experimental nature." Shadrick v. Coker, 963 S.W.2d 726, 736 (Tenn. 1998). In Reetz v. Jackson, 176 F.R.D. 412, 415 (D.D.C.1997), the court found that an issue survived summary judgment regarding whether the doctor "failed to inform her of the experimental nature of the pedicle screws." See also Pa. State Court Jury Awards $8 Million Verdict in Pedicle Screw Case, 3 No. 12 Mealey's Litig. Rep.: Pedicle Screws 6, Nov. 1997 (discussing jury verdict and noting that a motion filed by the defense "claims the court erred by allowing plaintiff's counsel to refer through a document to the FDA and the regulatory status of AcroMed plates and screws"); Advanced Spine, Doctor Get Defense Verdicts in California Pedicle Trial, 2 No. 16 Mealey's Litig. Rep.: Drugs & Med. Devices 9, Aug. 15, 1997 (discussing California case where issues regarding FDA were submitted to jury).