589 A.2d 213

**John F. KASKIE, Individually and as Administrator of the Estate of John Charles Kaskie, Deceased, and Mary Margaret Kaskie, Individually, Appellants,**

**v.**

**James WRIGHT, M.D., Lawrence Sherman, M.D., John Dietrick, M.D., Henry Hood, M.D., Kenneth E. Quickel, Jr., M.D., Thomas R. Royer, M.D., F. Kenneth Ackerman, Jr., M.D., Geisinger Medical Center, Geisinger Clinic and Geisinger Foundation, Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1990.

Filed Feb. 13, 1991.

Reargument Denied April 29, 1991.

guidelines as the defendant had stabbed her victim in the course of a robbery.

Thomas B. Rutter, Philadelphia, for appellants.

John B. Consevage, Harrisburg, for appellees.

Before MONTEMURO, TAMILIA and HOFFMAN, JJ.

MONTEMURO, Judge:

This is an appeal from an order granting appellees' motion for summary judgment in a wrongful death and survival action predicated on medical malpractice.

On July 2, 1981, appellants' decedent, their minor son, was severely injured when he was struck by an automobile driven by an intoxicated driver. The child was taken to appellee Geisinger Medical Center and delivered to the care of Dr. David Rees Stewart, who along with Drs. James Wright and Lawrence Sherman performed surgery. On July 4 the boy's brain ceased to function as the result of a reduction in intracranial blood flow; on July 10, he suffered cardiac arrest and died.

Appellants' commenced the instant wrongful death and survival action on June 10, 1987. The complaint averred that their son had died as the result of negligence on the part of Dr. Stewart[1] and sought damages therefor. Appellants also claimed that informed consent was lacking, as they had not been told prior to permitting the operation on their son that Dr. Stewart was an alcoholic and unlicensed to practice medicine in Pennsylvania. Their ignorance of these matters, of which they claim only to have become aware through newspaper coverage of an unrelated case, is proffered in explanation of their delay in instituting suit.

Appellees moved for summary judgment on the basis that the action is barred by the two year statute of limitations applicable to wrongful death and survival actions, 42 Pa. C.S.A. § 5524(2). The trial court agreed, and this appeal followed.

---

1. Dr. Stewart died during the pendency of the action. By agreement of the parties the proceedings against him and his estate for malpractice were severed.

Appellants sole claim on appeal is that the statute of limitations is tolled by what is characterized as appellees' fraudulent concealment of Dr. Stewart's addiction and licensure status at the time of the decedent's death.

> In reviewing an order granting summary judgment our function is to determine whether issues of triable fact exist. *Bobb v. Kraybill*, 354 Pa.Super. 361, 511 A.2d 1379 (1986). Summary judgment is proper only in cases free and clear from doubt, and for our review we accept as true all well-pleaded facts, giving the plaintiff the benefit of all reasonable inferences from the facts. *Roland v. Kravco, Inc.*, 355 Pa.Super. 493, 513 A.2d 1029 (1986).

*Zackhery v. Crystal Cave Company*, 391 Pa.Super. 471, 473–474, 571 A.2d 464, 465 (1990). *See also* Pa.R.C.P. 1035(b).

There is no dispute here that the action was commenced beyond the two year limitations period set by 42 Pa.S.C.A. 5524(2). Moreover, as appellees point out, the discovery rule, which extends periods of limitation where the existence of a cause of action cannot reasonably be discovered within the time prescribed by the applicable statute, does not apply to wrongful death and survival actions in Pennsylvania. *Pastierik v. Duquesne Light Company*, 514 Pa. 517, 526 A.2d 323 (1987). Appellants contend, however, that appellees are estopped from advancing the statute as a defense, arguing that the statute is tolled by appellees' failure to provide them with information which, had it been in their possession at the time of their son's death, would have led them to file suit earlier.[2] This failure is characterized as fraudulent concealment which in turn resulted in lack of informed consent.

Appellants correctly rely upon *Molineux v. Reed*, 516 Pa. 398, 532 A.2d 792 (1987), to define the conditions under which such estoppel may be said to exist.

---

**2.** Appellants credit the trial court with having ruled in their favor as to the existence of fraudulent representation. A careful reading of the trial court's Opinion proves otherwise.

Where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry," the defendant is estopped from invoking the bar of the statute of limitations. *Schaffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967); *Nesbitt v. Erie Coach Company*, 416 Pa. 89, 204 A.2d 473 (1964). Mere mistake, misunderstanding or lack of knowledge is insufficient, however, *Schaffer v. Larzelere, supra;* and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company, supra.*

*Id.*, 410 Pa. at 402, 532 A.2d at 794.

In general, to qualify as grounds on which a claim that an action is time barred may be equitably estopped, the conduct complained of must be *"something amounting to an affirmative inducement* to plaintiff to delay bringing the action." *Gravinese v. Johns–Manville Corp.*, 324 Pa.Super. 432, 442, 471 A.2d 1233, 1238 (1984) (emphasis added).

The trial court, in examining the case before it, determined that:

The alleged medical negligence of Dr. Stewart which caused the death was or should have been apparent when the minor decedent expired in July, 1981. If officials of defendant affirmatively concealed facts which related to that negligence, then the two year statute might be tolled, but, even if they concealed Dr. Stewart's alcoholism and non-licensure, there has been demonstrated no causal connection between those facts and the death of the minor.

Trial Court Opinion at 4.

Insofar as negligence is concerned, we are constrained to agree with the trial court's assessment. Although appel-

lants argue that the nexus between the doctor's shortcomings and the child's death was demonstrated in their complaint and affidavit, and bourne out by deposition testimony given in the companion case whose revelations gave rise to the instant action, our review of those documents yield no such connection. What is proffered as cause and effect in the complaint and affidavit is merely the same conclusory language which might appear in any claim of medical malpractice. The depositions are not included in the official record on this case and are not before us. *Ritter v. Ritter,* 359 Pa.Super. 12, 518 A.2d 319 (1986); *General Accident Fire and Life Assurance Corp., Ltd. v. Flamini,* 299 Pa.Super. 312, 445 A.2d 770 (1982); Pa.R.App.P.1921.[3]

Since, as *Molineux* makes clear, mere lack of information is not sufficient to make out a case for fraudulent concealment, the line between bare information and material facts must be drawn where the missing data is directly germane to the delay in advancing the claim. As this court ruled in *Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081 (1989), *alloc. dn.* 524 Pa. 621, 571 A.2d 383, the patient, or in this case his representatives, does not need to know the precise extent of the alleged injuries before the statute of limitation on informed consent will run. Here appellants knew the child died. At that time medical negligence would have been apparent and/or could have been discovered. This is not a situation where a condition caused by negligence emerges slowly. Appellants' apparent confidence in Dr. Stewart did not absolve them of the responsibility to be diligent concerning the treatment provided, *id.,* nor did any action of appellees divest appellants of their right of inquiry concerning the death of their child. Thus, the trial court was correct in its dismissal of appellants' wrongful death and survival action.

**3.** There are also letters attached as exhibits to appellant's brief which are purportedly from physicians involved with the companion case in some capacity. By Order of October 17, 1990, these materials have been stricken as dehors the record.

When examining the assertion of lack of informed consent, however, our inquiry alters: the question becomes whether the patient was made aware of all material risks which are collateral to a given procedure, including, at least, "the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results." *Gray v. Grunnagle,* 423 Pa. 144, 166, 223 A.2d 663, 674 (1966) (quoting R.E. Powell, *Consent to Operative Procedures,* 21 *Md.L.Rev.* 189 (1966)). Absent consent based on such awareness, the treating physician is considered to have committed a technical battery, and "is liable for any injuries resulting from the invasion, regardless of whether the treatment was negligently administered." *Cooper v. Roberts,* 220 Pa.Super. 260, 265, 286 A.2d 647, 649 (1971), applying the rule in *Gray, supra. See also, Gouse v. Cassel,* 385 Pa.Super. 521, 561 A.2d 797 (1989), *alloc. gr.* 524 Pa. 608, 569 A.2d 1367; *Sagala v. Tavares,* 367 Pa.Super. 573, 533 A.2d 165 (1987); *Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103 (1987).

Obviously, traditional analysis is somewhat removed from the facts at hand, as it is not the particular procedure performed upon the decedent which is at issue at here, but rather some alleged characteristics of the person performing it. The question then becomes whether the doctrine of informed consent can be expanded to include information other than that which concerns medical treatment by surgical procedure.

Appellant has supplied no precedential basis for expansion. To the contrary, where the suggestion has been made that the informed consent doctrine should subsume other aspects of medical treatment, this court has ruled otherwise. In *Boyer v. Smith,* 345 Pa.Super. 66, 497 A.2d 646 (1985), a panel of this court held that the doctrine could not be expanded to include the administration of therapeutic drugs, as this would require transformation of the fundamental nature of the informed consent doctrine. In Pennsylvania, consent to treatment is a contractual arrangement

between the parties under which physical contact with the patient's body must be agreed to, and no negligence is necessary for recovery. Drug therapy, on the other hand, involves no such contact, and failure to provide the patient with information concerning it would therefore constitute negligence. Recovery would accordingly be available under a malpractice theory. The *Boyer* panel concluded that contractual concepts applied to medical treatment cases were not to be brought to bear in situations other than those involving surgical or operative procedures, i.e., where there must be a "touching," because our supreme court in *Gray, supra,* by specifically relating the informed consent doctrine to assault and battery, contemplated no other application.

Although the instant case does involve a "touching," it fails to meet the more critical aspect of the *Boyer* criteria: there is no allegation here that appellants were uninformed about the particular procedures their son underwent irrespective of the surgeon performing them. Like the court in *Boyer*, we too refuse to expand the informed consent doctrine to include matters not specifically germane to surgical or operative treatment. To do so, where the absent information consists of facts personal to the treating physician, extends the doctrine into realms well beyond its original boundaries. Nor are limitations easily definable. Are patients to be informed of every fact which might conceivably affect performance in the surgical suite? Moreover, here, no clear nexus has even been established between injury and lack of knowledge.

Matters such as personal weaknesses and professional credentials of those who provide health care are the responsibility of the hospitals employing them, the professional corporations who offer their services, or the associations which are charged with oversight. Their failure to fulfil their obligations in this regard becomes a matter of negligence, and it is from them that recovery must be sought.

Given our determination that appellants have stated no legal basis for recovery, we find that the trial court proper-

342

ly granted summary judgment as to the informed consent claim.

Judgment affirmed.