## Risser v. Pepper

8

C.P. of Dauphin County, no. 4720 S 1992.

*Craig A. Stone,* for plaintiff.
*Richard H. Wix,* for defendants.

*BEFORE,* KLEINFELTER, EVANS & HOOVER, *JJ.*

KLEINFELTER, *J.,* March 29,1996—The present matter before the court is the motion for partial summary judgment of defendants Larry Pepper D.M.D., and Central Pennsylvania Oral and Maxillofacial Surgeons (CPOMS), a three-dentist partnership of which Dr. Pepper is one of the partners. According to the pleadings, plaintiff Gwendolyn L. Risser was initially operated upon by Dr. Pepper on November 13, 1990 at the Polyclinic Medical Center. The surgery included a "bilateral sagittal split osteotomy" and a "horizontal reduction genioplasty." Approximately two weeks later, on November 26, 1990, Dr. Pepper performed a procedure in his office to correct a "condylar sag on the right

side at the osteoartery site" of Risser's jaw. Risser's last visit to Dr. Pepper occurred on January 31, 1992.

Plaintiff claims that on August 26, 1992 she was admitted to a hospital in Blacksburg, Virginia with a diagnosis of "post-traumatic neuralgia and sensory neuropathy of the mandibular nerves bilaterally." Risser alleges that subsequent surgery revealed that "as a result of the previous surgeries performed by Dr. Pepper, plaintiff had sustained a traumatic neuroma of the right inferior alveolar nerve, posttraumatic (sic) neuralgia of bilateral mandibular nerves, perineural fibrosis of the left mental nerve and a bony sequestrum of the right coronoid process with fibrous malunion." Risser further alleges that the injuries are "permanent."

Risser initiated the present action with a writ of summons on November 20, 1992. On June 6, 1994 she filed a complaint containing three counts. As part of the basis of all three counts plaintiff avers that Dr. Pepper was not competent to perform the surgical procedures at issue because he failed to pass, "on multiple occasions," the examination for certification by the American Board of Oral Maxillofacial Surgeons. The first count is an action in negligence against Dr. Pepper. The second count alleges that Dr. Pepper committed battery because he failed to obtain plaintiff's informed consent. In the last count plaintiff charges CPOMS with both direct and vicarious liability for Dr. Pepper's negligence. Plaintiff claims that CPOMS is directly liable on two grounds. First, plaintiff states that CPOMS was negligent for actively soliciting plaintiff and others to have surgical procedures performed by Dr. Pepper when CPOMS knew or should have known that Dr. Pepper was not competent to perform such procedures. (Complaint, paragraph 33(a).) Plaintiff's next two allegations go towards an action in battery (lack of informed con-

sent). Here, Risser charges CPOMS with failure to disclose the fact that Dr. Pepper had not passed the exams for ABOMS certification and to advise plaintiff, prior to surgery, of "all of the relevant and material facts" constituting the risks involved in the surgery performed on her. (Complaint, paragraphs 33(b) and (c).)[1]

Defendants filed an answer with new matter on September 20, 1994. On August 29, 1995 defendants filed the present motion for partial summary judgment. The motion was argued before an en banc court in February 1996.

Defendants' brief in support of summary judgment outlines the issues as follows:

"(A) Whether all claims about the results of Dr. Pepper's certification examination must be dismissed because the exam results in no way establish a breach of any duty?

"(B) Whether the claim of direct liability against CPOMS must be dismissed because the doctrine of corporate liability is limited to claims against hospitals?"

We begin our review with defendants' argument that all claims relating to Dr. Pepper's certification must be dismissed. These allegations actually arise within the context of separate causes of action within the complaint. The first two of these lie in claims of lack of informed consent (battery). Count II (paragraph 28)

---

1. Count III is awkward in its structure since it actually consists of three separate causes of action against CPOMS: vicarious liability, direct liability (negligent employment), and lack of informed consent (battery). Rule 1020(a) of the Pennsylvania Rules of Civil Procedure instructs that "[e]ach cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief."

alleges that Dr. Pepper failed to disclose to plaintiff that he had failed his examinations for board certification. Count III (paragraph 33(b)) charges CPOMS with the same failure to disclose. The third cause of action relates to the negligence of CPOMS in soliciting plaintiff for a surgical procedure knowing that Dr. Pepper was not competent. (Count III, paragraph 33(a).)

We are satisfied that the challenged averments are not relevant to the claims of battery in Count II, paragraph 28, and Count III, paragraphs 33(b) and (c). In *Kaskie v. Wright,* 403 Pa. Super. 334, 589 A.2d 213 (1991), appellants claimed that informed consent was lacking where they had not been told prior to the operation that the surgeon was an alcoholic and unlicensed to practice medicine. Superior Court confronted the issue as to whether the doctrine of informed consent should be expanded to include information other than that directly involved in the surgical procedure. Finding no precedential basis[2] for such expansion the court concluded:

"Matters such as personal weaknesses and professional credentials of those who provide health care are the responsibility of the hospitals employing them, the professional corporations who offer their services, or the associations which are charged with oversight. Their failure to fulfil their obligations in this regard becomes a matter of negligence, and it is from them that recovery must be sought." *Id.* at 341, 589 A.2d at 217.

---

2. The court reviewed *Boyer v. Smith,* 345 Pa. Super. 66, 497 A.2d 646 (1985), where a panel declined to expand the doctrine to include the administration of therapeutic drugs.

Applying the clear language in *Kaskie,* it follows that plaintiff's counts of battery for lack of informed consent must fail. Accordingly, we will grant summary judgment and dismiss Count II, paragraph 28, and paragraphs 33(b) and (c) in Count III.

We are left with the interesting question of liability of the partnership in negligence. Again the language in *Kaskie* suggests that plaintiff may have a cause of action against the partnership if it held Dr. Pepper out as an expert in a field in which he was not certified or if his track record raised questions about his competency to perform the surgical specialty undertaken in this case. We do note that the language quoted from *Kaskie* is dictum and that no authority is cited. Nevertheless, the proposition contained in the quotation is not without foundation. For example, in *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991), the court set forth the now well-established duty of a hospital to select and retain only competent physicians and to oversee all persons who practice medicine within its walls.

Defendants herein argue that *Thompson* applies only to hospitals and that the theory of corporate liability announced in that case has not been expanded to professional corporations providing medical care outside of the hospital setting. Yet that is exactly what is implied in *Kaskie.* Furthermore, it is apparent to all that in this day of rapid changes in the delivery of health care that many surgical procedures are being performed on an outpatient basis by various forms of medical "groups," "clinics," "associations" and "partnerships." We are not prepared today to say as a matter of law that plaintiffs are barred in a negligence claim against

CPOMS for liability for failing to hire or accept into partnership only those physicians who are competent either by board certification or experience.[3] Accordingly, defendants' motion for summary judgment as regards the negligence claims in paragraph 33(a) of Count III must be denied.

We enter the following

## ORDER

And now March 29, 1996 defendants' motion for partial summary judgment is granted with respect to the claims of lack of informed consent in Count II, paragraphs 27-28 (the claim in paragraphs 29-30 survives), and in Count III, paragraphs 33(b) and (c). The claims in paragraphs 32-33 survive.

---

3. We are aware that this result does not fully accord with that reached in *Firestone v. Pepper and C.P.O.M.S.,* an unpublished opinion (1643 S 1988), decided by a panel of this court (Morgan, Turgeon and Kleinfelter) and filed December 16, 1992. In that case we sustained a demurrer and struck with prejudice those allegations in the complaint which alleged a failure to disclose. Our grant of partial summary judgment today is consistent with the result of *Firestone.* We depart today from that language in *Firestone* which suggested that a claim of corporate negligence is only applicable to hospitals. As we have stated above, *Thompson v. Nason Hospital* does not limit its holding to hospitals. Moreover, *Kaskie v. Wright* strongly suggests that the duty to employ competent physicians is to be more broadly applied. Since we cannot find definitive authority on the issue, summary judgment would not be appropriate.