1999 PA Super. 6

**Janice A. FOFLYGEN, Appellant,**

v.

**ALLEGHENY GENERAL HOSPITAL; Sergio Betancourt, M.D. and Kira Kislan, M.D., Appellees.**

Superior Court of Pennsylvania.

Argued June 23, 1998.

Filed Jan. 11, 1999.

Peter M. Suwak, Washington, for appellant.

Korry A. Greene, Pittsburg, for appellee.

Before KELLY, JOHNSON, and TAMILIA, JJ.

KELLY, J.

¶ 1 In this appeal, Appellant, Janice Foflygen, asks us to determine whether the information she received prior to her gastric-bypass surgery was sufficient to constitute informed consent. We hold that the validity of a surgical patient's informed consent depends upon the pretreatment information relayed to the patient, regardless of whether the disclosures are made by the treating physician or another qualified person such as a nurse or other assistant. For the reasons set forth in this opinion, we affirm the trial court's final order of judgment in favor of Appellees, Allegheny General Hospital, Sergio Betancourt, M.D., and Kira Kislan, M.D.

¶ 2 The relevant facts and procedural background of the appeal are as follows. On March 22, 1988, Dr. Betancourt performed an elective, near-total gastric bypass procedure on Appellant, due to her morbid obesity. Following her surgery, Appellant suffered a stroke. On March 21, 1990, Appellant filed a medical malpractice claim against Appellees, alleging that the surgery was unnecessary, negligently performed and performed without her informed consent. At trial, Appellant voluntarily withdrew a negligence count (having to do with unnecessary surgery) and proceeded on the lack of informed consent counts only. At the close of the liability portion of the case, the trial court entered a non-suit in favor of Appellees, Allegheny General Hospital and Dr. Kislan. Following four days of trial, the jury returned a verdict in favor of Dr. Betancourt on the informed consent counts. Appellant filed post verdict motions, which the trial court denied by Order and Opinion. This timely appeal followed.

¶ 3 On appeal, Appellant raises seven issues, which she frames as follows:

I. WHETHER THE [TRIAL] COURT COMMITTED LEGAL ERROR IN REFUSING TO PERMIT THE TESTIMONY OF DR. SHIRLEY KINDRICK, OFFERED AS A REBUTTAL WITNESS ON BEHALF OF THE [APPELLANT]?

II. WHETHER THE [TRIAL] COURT COMMITTED LEGAL ERROR IN REFUSING TO PERMIT [APPELLANT]'S EXPERT WITNESS, DR. WHELCHEL, TO TESTIFY THAT [APPELLANT]'S STROKE CAUSALLY WAS RELATED TO THE [APPELLEE]'S SURGICAL PROCEDURES?

III. WHETHER THE [TRIAL] COURT COMMITTED LEGAL ERROR IN PERMITTING THE [APPELLEE] TO INTRODUCE THE EXPERT TESTIMONY OF DR. BAFFONI?

IV. WHETHER THE [TRIAL] COURT COMMITTED LEGAL ERROR IN ANSWERING A WRITTEN QUESTION POSED BY THE JURY REGARDING THE EFFECT TO BE GIV-

EN TESTIMONY BY NURSING STAFF ABOUT INFORMED CONSENT?

V. WHETHER THE [TRIAL] COURT COMMITTED ERROR IN GRANTING A COMPULSORY NONSUIT AND DISMISSING COUNT II OF [APPELLANT]'S COMPLAINT REGARDING UNNECESSARY SURGERY?

VI. WHETHER VOIR DIRE WAS CONDUCTED IN A MANNER PREJUDICIAL TO THE [APPELLANT]'S DUE PROCESS RIGHTS UNDER THE PENNSYLVANIA AND UNITED STATES CONSTITUTION?

VII. WHETHER [APPELLANT] IS ENTITLED TO JUDGMENT N.O.V. IN HER FAVOR SINCE EVEN SOME OF THE RISKS [APPELLEE]'S EXPERT ADMITTED SHOULD HAVE BEEN EXPLAINED WERE NOT DISCLOSED TO [APPELLANT] PRIOR TO THE SURGERY?

(Appellant's Brief at 3).

¶ 4 Our standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. *Childers v. Power Line Equipment Rentals, Inc.*, 452 Pa.Super. 94, 681 A.2d 201, 206 (Pa.Super.1996), *appeal denied,* 547 Pa. 735, 690 A.2d 236 (1997) (quoting *Dougherty v. Edward J. Meloney, Inc.,* 443 Pa.Super. 201, 661 A.2d 375, 387 (Pa.Super.1995), *appeal denied,* 544 Pa. 608, 674 A.2d 1072 (1996)); *Ludmer v. Nernberg,* 433 Pa.Super. 316, 640 A.2d 939, 942 (Pa.Super.1994), *appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995), *certiorari denied,* 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996) (citing *Stevenson v. General Motors Corp.,* 513 Pa. 411, 413, 521 A.2d 413, 420–21 (1987)). In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. *Childers, supra.* Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. *Id.* "Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Id.*

¶ 5 After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable S. Louis Farino, we have determined that there is no merit to Appellant's first and second issues raised on appeal. Judge Farino's opinion succinctly discusses and properly disposes of these issues as follows:

The [Appellant]'s main assignment of error is that the Court refused to permit rebuttal testimony to challenge the statistics given by the [Appellee] as to the success rate of the alternatives to surgery. This raises the issue as to whether the doctrine of informed consent extends to statistics regarding the success of alternatives. A physician or surgeon need not disclose all known information; however, the physician or surgeon is required to advise the patient of those material facts, risks, complications, and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation. *Stover v. Association of Thoracic & Cardiovascular Surgeons,* 431 Pa.Super. 11, 635 A.2d 1047 (1993). The determination of what a reasonable patient would do or consider significant under certain circumstances is for the jury to decide; expert assistance is not necessary. *Rowinsky v. Sperling,* 452 Pa.Super. 215, 681 A.2d 785 (1996).

In this case the proffered rebuttal testimony was to offer different statistics as to the success of some non-surgical weight reduction alternatives. This is certainly beyond the scope of the doctrine of informed consent and therefore not relevant. *Stover,* 431 Pa.Super. at 18, 635 A.2d at 1050, *Kline v. Behrendt,* 396 Pa.Super. 302, 578 A.2d 526 (1990). Even if such statistical information [were] relevant under the informed consent doctrine it would not apply in this case since the [Appellant] had al-

ready testified that during the 70's and 80's she had tried non-surgical weight loss programs, including those that were medically supervised and they did not work for her. She testified that any weight loss under those programs was subsequently regained and therefore [Appellant]'s own evidence established that she fell outside the statistical success rate of the non-surgical alternatives regardless of the percentages of success.

[Appellant] next complains that the Court, "refused to permit [Appellant]'s expert to render an opinion as to whether the stroke that [Appellant] suffered a few days after the surgery was related to the surgery." A review of a portion of the direct examination of [Appellant]'s expert, Dr. Whelchel, at page 138 of the transcript indicates that the contrary is true.

Mr. Suwak Q: "Doctor, I also want to ask you whether or not a surgeon could even have predicted this stroke?"

A: "Absolutely not. The stroke was completely out of the blue."

Q: "So as you stated in your report, no surgeon could predict this stroke or prevent it?"

A: "You can't prevent them if you can't predict them. But no, there was no way you could have prevented this stroke."

Q: "So really, as far as the informed consent, you have given us different risks that the doctor has to speak about, but he doesn't really have to specifically speak about the risk of stroke, is that right?"

A: "That is correct."

Q: "The stroke itself is not a part of the informed consent?"

A: "That is correct."

(Trial Court Opinion, dated 5/15/98 at 2–4.) Accordingly, we affirm on the basis of the trial court's opinion as to issues one and two.

¶ 6 In her third issue, Appellant maintains that the trial court erred when it permitted Dr. Baffoni to discuss whether Appellant had suffered a pulmonary embolism because that testimony exceeded the scope of his report. Appellant further argues that the trial court erred when it permitted this defense expert to testify in a manner, which Appellant claims was outside the scope of his report. Appellant states that Dr. Baffoni indicated in his report that he could not provide an opinion as to the issue of informed consent. Appellant contends that Dr. Baffoni's testimony, regarding alternatives to surgery for the morbidly obese patient, were unfair comments which exceeded the scope of the expert report and unduly prejudiced Appellant. As such, Appellant concludes, the trial court erred when it overruled Appellant's objection and admitted this testimony into evidence. We disagree.

¶ 7 Pennsylvania law is well settled regarding the admission and exclusion of evidence at trial:

Rulings on the admission and exclusion of evidence are within the discretion of the trial judge and will not be reversed on appeal absent a manifest abuse of that discretion. The admission of expert testimony is a matter within the sound discretion of the trial court, and appellate review of the trial court's action is similarly and correspondingly limited. The decision of the trial judge on the question of the admissibility of expert testimony will not be reversed, remanded, overruled, or disturbed by an appellate court unless there was a clear abuse of discretion or a clear error. However, that discretion is not unlimited, and where the ruling of a trial court exceeds those limits and a party is prejudiced thereby reversible error occurs.

\*    \*    \*    \*    \*    \*

[I]n determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. The trial court must also inquire whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial. What constitutes surprise and preju-

dice, however, depends upon the pre-trial particulars of each case.

*Tiburzio–Kelly v. Montgomery,* 452 Pa.Super. 158, 681 A.2d 757, 764–65 (Pa.Super.1996) (citations omitted). *See Walsh v. Kubiak,* 443 Pa.Super. 284, 661 A.2d 416, 419–21 (Pa.Super.1995) (*en banc*). In addition, "[f]act testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony." *Brady v. Ballay, Thornton, Maloney Medical Associates, Inc.,* 704 A.2d 1076, 1082 (Pa.Super.1997) (citing *Havasy v. Resnick,* 415 Pa.Super. 480, 609 A.2d 1326, 1333 (Pa.Super.1992)). Further, "an expert may base his or her opinion on facts learned by listening to testimony at trial." *Id.* (citing *Tobash v. Jones,* 419 Pa. 205, 213 A.2d 588 (1965)). Where an expert's fact/opinion testimony is fair rebuttal to the other party's expert testimony, it cannot be seen as unfairly surprising or prejudicial. *Id.* at 1082–83.

¶ 8 In the instant case, Appellant objected to Dr. Baffoni's testimony that, in his opinion, Appellant had not suffered a pulmonary embolism, because this opinion was not reflected in his report. Our review of Dr. Baffoni's report reveals no comment on whether Appellant had or had not suffered a pulmonary embolism. However, Appellant had sufficient notice of Appellees' theory of the case to prevent any surprise or prejudice. *See Tiburzio–Kelly, supra.* Further, Dr. Baffoni was simply responding to Appellant's expert's testimony given at trial. Therefore, we conclude that the testimony was fair rebuttal and cannot be construed as unfairly surprising or prejudicial. *See Brady, supra.*

¶ 9 Appellant also protests that the trial court erroneously permitted Dr. Baffoni to testify regarding the lack of success of alternatives to surgery[1] because in his report, Dr. Baffoni refused to render an opinion on the question of informed consent. However, the record reveals that it was Appellant's counsel who questioned Dr. Baffoni regarding weight loss alternatives to sur-

gery. (N.T. Trial, 11/17/96 at 345–46). Moreover, although it is true that Dr. Baffoni refused to render an expert opinion as to the informed consent issue, in his report he discussed at length the lack of feasible, successful methods of permanent weight loss other than surgical intervention. Therefore, we conclude that this testimony was also properly admitted at trial.

¶ 10 Next, Appellant questioned the propriety of the trial court answering a written question posed by the jury regarding the weight to be given testimony relayed to Appellant by the nursing staff about informed consent. Appellant contends that where, as here, the surgeon admits that he took responsibility for explaining the complex surgical risks and benefits, the jury should not have been instructed to give any weight to seminar statements by the surgeon's nurse. We disagree.

¶ 11 In *Bulman v. Myers,* 321 Pa.Super. 261, 467 A.2d 1353 (Pa.Super.1983), the appellant-patient brought a trespass action against the appellee-surgeon, seeking damages for injuries sustained as a result of the surgical removal of her maxillary and mandibular left and right molars. The appellant alleged that the surgery had been performed without her informed consent. The appellant made no assertion of negligent performance. Following trial, the jury returned a verdict in favor of the appellee. On appeal, the appellant contended, *inter alia,* that the trial court erred when it failed to charge the jury that a patient cannot formulate a valid, informed consent to a surgical procedure when disclosures of the risks of surgery are made by a nurse assistant and not by the surgeon. This Court held that the validity of a patient's consent is based upon the scope of the information given, not the identity of the person relaying the pre-treatment information. *Id.* at 1355.

¶ 12 Similarly, in the instant case, Appellant testified that she spent approximately forty-five minutes to one hour with Appellee-surgeon while he explained the pro-

---

1. Dr. Baffoni stated that alternatives to surgery for the morbidly obese patient were a fantasy, which he likened to believing in Santa Claus.

cedure and the risks and benefits of surgery. Thereafter, prior to executing the consent form, Appellant attended an approximately two-hour long patient information seminar conducted by Appellee-surgeon's nurse. Because the validity of the patient's consent is based on the scope of the information relayed, rather than the identity of the individual communicating the information, we conclude that the trial court properly instructed the jury to consider the information presented by Appellee-surgeon's nurse along with that discussed by Appellee-surgeon when deliberating on the informed consent issue. *See id.* Therefore, this issue is also meritless.

¶ 13 In her fifth issue, Appellant asserts that the trial court erred when it dismissed Count II of her complaint regarding unnecessary surgery. (Appellant's Brief at 25).[2] However, our review of the trial transcript reveals that Appellant failed to raise any objection to the alleged trial court error, resulting in waiver. *See* Pa.R.A.P. 302(a) (issues not raised in trial court are waived and cannot be raised for first time on appeal); *Ludmer, supra* at 946 (counsel must make timely, specific objections during trial to ensure that trial court has opportunity to correct alleged errors, or error is waived).

¶ 14 Appellant's sixth issue is a challenge to the manner in which *voir dire* was conducted. Appellant complains that the trial court refused many of the questions that she submitted to be used in *voir dire*. Appellant alleges that she was prevented from participating in the selection of jurors in any meaningful way, and that therefore her due process rights were violated. However, as Appellant points out, *voir dire* was not recorded, making it impossible for this Court to review the proceedings. Further, Appellant registered no objection at the earliest possible opportunity. Therefore, Appellant failed to preserve this issue for appellate review. *See* Pa.R.A.P. 302; *Brown v. Philadelphia Tribune Co.,* 447 Pa.Super. 52, 668 A.2d 159 (Pa.Super.1995), *appeal denied,* 544 Pa. 621, 675 A.2d 1241 (1996), *certiorari de-*

nied, —— U.S. ——, 117 S.Ct. 173, 136 L.Ed.2d 114 (1996) (holding that issues not preserved on trial are waived on appeal, even if issues raised are of constitutional dimension).

¶ 15 In her seventh and final issue, Appellant asserts that the trial court erred when it denied her motion for judgment notwithstanding the verdict. Appellant argues that Appellees' expert conceded that there were certain risks to rapid weight loss (i.e. cholecystitis), which Appellant asserts, and Appellees admit, were not discussed with Appellant prior to surgery. We disagree.

¶ 16 When reviewing the propriety of an order granting or denying judgment notwithstanding the verdict, we must determine whether there is sufficient competent evidence to sustain the verdict. *Johnson v. Hyundai Motor America,* 698 A.2d 631, 635 (Pa.Super.1997), *appeal denied,* 551 Pa. 704, 712 A.2d 286 (1998) (citations omitted); *Haws v. Conforti,* 454 Pa.Super. 307, 685 A.2d 201, 202 (Pa.Super.1996); *Rowinsky v. Sperling,* 452 Pa.Super. 215, 681 A.2d 785, 788 (Pa.Super.1996), *appeal denied,* 547 Pa. 738, 690 A.2d 237 (1997) (quoting *Samuel Rappaport Family Partnership v. Meridian Bank,* 441 Pa.Super. 194, 657 A.2d 17, 20 (Pa.Super.1995)). We must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *Johnson, supra* ; *Haws, supra* ; *Rowinsky, supra.*

¶ 17 Pennsylvania law makes clear that a judgment notwithstanding the verdict is proper only in clear cases where the facts are such that no two reasonable minds could disagree that the verdict was improper. *Johnson, supra* ; *Rowinsky, supra.* Judgment notwithstanding the verdict may not be employed to invade the province of the fact-finder; questions of fact must be resolved by the jury. *Ludmer, supra* at 942 (citing *Trawick v. Nationwide Mutual Insurance Co.,* 242 Pa.Super. 271, 363 A.2d

---

**2.** Our perusal of Appellant's complaint reveals that it is actually Count III, not Count II, which

addresses "unnecessary surgery."

1265 (Pa.Super.1976)). Questions of credibility and conflicts in evidence are for the factfinder to resolve. *Commonwealth, Department of Transportation v. Patton*, 546 Pa. 562, 568, 686 A.2d 1302, 1305 (1997); *Miller v. Brass Rail Tavern, Inc.*, 702 A.2d 1072, 1076 (Pa.Super.1997) (citation omitted). This Court will not substitute its judgment based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned. *Id.*

¶ 18 Regarding informed consent, our Supreme Court has stated:

[S]ince the agreement between the physician and his patient is contractual in nature, for there to be a valid consent it must be clear that both parties understand the nature of the undertaking and what the possible as well as expected results might be.... [I]t will be no defense for a surgeon to prove that the patient had given his consent, if the consent was not given with a true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results.

*Rowinsky, supra* (quoting *Gray v. Grunnagle*, 423 Pa. 144, 166, 223 A.2d 663, 674 (1966)). *See Stover v. Association of Thoracic & Cardiovascular Surgeons*, 431 Pa.Super. 11, 635 A.2d 1047, 1051 (Pa.Super.1993); *Foflygen v. Zemel, M.D.*, 420 Pa.Super. 18, 615 A.2d 1345, 1353 (Pa.Super.1992), *appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993). The *Rowinsky* Court continued:

A physician or surgeon need not disclose all known information; however, the physician or surgeon is required to advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation. Thus, the patient is assured that he will be provided with all the material facts from which he can make an intelligent choice as to his course of treatment, regardless of whether he in fact chooses rationally.

The goal of the informed consent doctrine is to provide the patient with material information which is necessary to determine whether or not to proceed with the surgical procedure. If this vital information regarding risks, complications, and alternatives to surgery, which a reasonable person in the patient's position would have considered significant, is not disclosed to the patient, the surgeon is held liable. *The determination of what a reasonable patient would do or consider significant under certain circumstances is for the jury to decide ....*

*Rowinsky, supra* at 788–89 (emphasis added) (citations omitted).

¶ 19 Instantly, the jury, having heard all of the testimony and having considered all of the evidence, determined that Appellant was provided with the material information necessary to decide whether to go forward with the surgical procedure. The jury found in favor of Appellees and against Appellant. We will not usurp the function of the jury. Hence, we conclude that the trial court properly denied Appellant's motion for judgment notwithstanding the verdict. Accordingly, based upon the foregoing, we affirm the May 15, 1997 order denying post verdict motion and affirming judgment in favor of Appellees.

¶ 20 Order affirmed.

