Cloma E. DUTTRY and Alvin
Duttry, Appellants,

v.

Lewis T. PATTERSON, M.D. and
Patterson Surgical Associates,
Appellees.

Superior Court of Pennsylvania.

Argued June 15, 1999.

Filed Oct. 5, 1999.

Reargument Denied Dec. 16, 1999.

Richard H. Wix, Harrisburg, for appellants.

Donald Blackwell, York, for appellees.

Before DEL SOLE, J., STEVENS, J., and CIRILLO, President Judge Emeritus.

DEL SOLE, J.:

¶ 1 This is an appeal from a judgment entered following a jury verdict in favor of defendants-Appellees in a matter brought by Appellants based upon negligence and a failure to obtain informed consent. We vacate the judgment and remand for a new trial on Appellants' informed consent claim.

¶ 2 Appellant, Cloma Duttry, was under the care of Lewis T. Patterson, M.D. and Patterson Surgical Associates when she underwent surgery for esophageal cancer. Appellants[1] claim that a leak later occurred along the surgical site which developed into a rupture requiring emergency surgery. They assert that as a result Mrs. Duttry developed Adult Respiratory Disease Syndrome with permanent damage to her lungs, rendering her unable to work.

¶ 3 Appellants brought an action against Dr. Patterson, Patterson Surgical Associates, and the Polyclinic Medical Center. Upon stipulation of all parties Polyclinic Medical Center was dismissed from the case. Appellants' battery claim for lack of informed consent, and negligence against Dr. Patterson proceeded to trial, as did their claim against Patterson Medical Center based upon respondeat superior. The jury returned a verdict in favor of the defendants. Appellants filed post-trial motions, which were denied, and this appeal followed.

¶ 4 At issue in this case is the trial court's refusal to permit Appellants to offer documentary and testimonial evidence relating to the actual number of esophageal surgeries performed by Dr. Patterson before he operated on Mrs. Duttry. In support of their informed consent claim Appellants made an offer of proof that Mrs. Duttry would testify she questioned Dr. Patterson about his experience and he advised her he had performed this particular procedure on an average of once a month. In fact, they allege he had performed it only five times in the preceding five years.

¶ 5 The trial court ruled this information was irrelevant to the doctrine of informed consent and excluded evidence re-

---

1. Cloma E. Duttry and her husband, Alvin    Duttry.

lating to the doctor's experience and the misinformation imparted to Appellants about his surgical experience. Both the trial court and Appellees claim that following the case of *Kaskie v. Wright*, 403 Pa.Super. 334, 589 A.2d 213 (1991) a physician is not required to inform a patient of the number of times the physician has performed a specific procedure. They claim that to do so would expand existing law to include personal characteristics of the surgeon. As further support for the trial court's ruling Appellees contend that Appellants did not offer any medical expert testimony that Dr. Patterson's level of inexperience with this type of surgery presented a material risk with respect to the surgery.

¶ 6 Upon review we find no support for the trial court's ruling. We conclude that this information was relevant under the facts of this case and that medical expert testimony was unnecessary in this battery claim.

¶ 7 An agreement between a physician and patient is contractual in nature and for consent to be valid, both parties must understand the nature of the undertaking and the possible, as well as, the expected results. *Gouse v. Cassel*, 532 Pa. 197, 615 A.2d 331 (1992). Although a physician need not disclose all known information, the physician is required to "advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person would consider significant in deciding whether to have the operation." *Id.* at 334. The question thus becomes whether a reasonable person who questions a doctor about the doctor's personal qualifications and experience, when making a decision whether to have this individual perform a procedure, would consider this information significant in making the decision. We conclude that a reasonable person would consider it significant and an individual surgeon who provides false information when so questioned would be subject to a claim of lack of informed consent.

¶ 8 While the courts of this Commonwealth have not considered this exact question, in *Johnson v. Kokemoor*, 199 Wis.2d 615, 545 N.W.2d 495 (1995), the Supreme Court of Wisconsin reviewed a case where the plaintiff alleged that her surgeon did not obtain her informed consent when operating to clip an aneurysm. The plaintiff testified that she questioned the defendant regarding his experience and he replied that he had performed the surgery "several" times. When the plaintiff asked what he meant by "several," he replied, "dozens." *Id.* at 498. In fact, however, the defendant had relatively limited experience with aneurysm surgery and had never operated on a large basilar bifurcation aneurysm such as the plaintiff's. The court ruled that a reasonable person in the plaintiff's position would have considered this information of the defendant's relative lack of experience in performing this specific surgery to have be material in making an intelligent and informed decision about the surgery. Accordingly it found that evidence of the defendant's lack of experience was properly admitted to support the plaintiff's informed consent case.

¶ 9 We too conclude that individuals who question their surgeons prior to surgery about their competence, experience and expertise are seeking information that is highly relevant to them in making an informed decision about their surgeon. A particular surgeon's skill, which many times is borne by virtue of experience, is important to those making a choice of their personal surgeon. Certainly one who questions a physician about these matters deems the answers important and is entitled to truthful and accurate information. A surgeon who, when answering a patient's inquiries, misinforms the patient about this information and misleads the patient into believing that the hands of an experienced surgeon will be performing

the operation, does not have the true consent of that patient.

¶ 10 We are not implying that surgeons must inform all their patients about their educational background and experience, but where such information is sought, the patient deems it very relevant and truthful answers must be given in order to obtain valid consent. The trial court cites *Kaskie v. Wright, supra.* in support of its ruling that this information is irrelevant. There the appellants claimed their informed consent was lacking because they had not been told prior to their son's operation that the surgeon was an alcoholic and unlicensed to practice medicine. The court considered this claim in view of the defendant's statute of limitations defense, but in so doing commented that it refused to expand the doctrine of informed consent to absent information which consists of facts personal to the treating physician. Our ruling does not differ with these comments. It is not necessary in every case for a physician to disclose matters such as experience, credentials or any personal problems. However, where a patient seeks to discover this information by asking the physician these direct questions, that patient deems such information important in the very personal decision of which physician to choose, and a physician who obtains "consent" by providing misinformation, does not have the true consent of the patient.

¶ 11 This court has recognized the significance of obtaining a patient's personal consent to permit a particular physician to perform an invasive procedure. In *Taylor v. Albert Einstein*, 723 A.2d 1027 (Pa.Super.1998) the plaintiff alleged that she had granted consent to perform an invasive procedure only to a Dr. Wetheimer, based upon his representation that he had performed the procedure hundreds of times. When it was later discovered that the procedure was actually performed by Dr. Trinkaus, this court concluded that there was substantial credible evidence to support a battery claim based upon lack of consent. The court ruled that "Pennsylvania law permits a patient to specifically limit his or her consent to an invasive procedure to a particular surgeon." *Id.* at 1034.

¶ 12 The same was held to be true in the case of *Grabowski v. Quigley*, 454 Pa.Super. 27, 684 A.2d 610 (1996), *allo. granted*, 548 Pa. 670, 698 A.2d 594 (1997), *appeal dismissed as improvidently granted*, 553 Pa. 75, 717 A.2d 1024 (1998). There the plaintiff claimed that after he had undergone surgery he learned it was performed not by the individual surgeon he had authorized to do the procedure, but by another not so authorized. The court ruled that the plaintiff had alleged sufficient facts to establish a cause of action for battery because consent was lacking. The court stated: "The patient is entitled to the services of the particular surgeon with whom he or she contracts." *Id.* at 617.

¶ 13 These cases are similar to the instant case. They recognize that individual patients have a right to choose their surgeons and that this choice is often times made based upon the surgeon's qualifications and experience. Where, however, the patient who seeks to learn such details, is provided with false information, that patient has not validly consented to surgery.

¶ 14 Further, Appellees assertion that Appellants could not go forward with this informed consent case because they had no expert testimony connecting the doctor's inexperience with the claimed injuries, is unfounded. In this type of claim where the plaintiff alleges the physician did not have her consent to perform the surgery because she was misinformed of his qualifications, the theory of recovery is battery and the plaintiff need not establish negligence. As was stated in *Taylor v. Albert Einstein, supra:* "Unlike an informed consent case where it must be shown that 'as a result of the recommended treatment, the patient actually suffers an injury the risk or which was

undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment,' it is not necessary for a plaintiff to prove such specific medical findings under a theory of battery." *Taylor*, 723 A.2d at 1035 (citations and emphasis omitted.). "It is the conduct of the unauthorized procedure which constitutes the tort." *Id.* (citing *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1008 (1992)).

¶ 15 Appellants in this case proceeded under a battery theory. They were entitled to fully develop their claim that Dr. Patterson was unauthorized to perform the surgery on Mrs. Duttry due to his mischaracterization of his experience. Accordingly, we find the trial court erred in prohibiting the introduction of evidence regarding the accuracy of Dr. Patterson's responses to Appellants' inquiries about his surgical experience, which a reasonable person would deem to be a significant factor in formulating consent to a surgery by this particular surgeon.[2]

¶ 16 Remaining for our review is Appellants' claim that the trial court abused its discretion by allowing Appellees' medical expert to render opinions of the issue of causation, which exceeded the scope of his report.

> In determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. The trial court must also inquire whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial. What constitutes surprise

and prejudice, however, depends upon the pre-trial particulars of each case. *Foflygen v. Allegheny General Hospital*, 723 A.2d 705, 709 (Pa.Super.1999).

¶ 17 We have examined Appellants' claims in view of the testimony offered and the expert report and we find no error in the trial court's ruling. "An expert may base his or her opinion on facts learned by listening to testimony at trial." *Id.* at 710 (citations omitted). And, where an expert's testimony is fair rebuttal to the other party's expert testimony, it cannot be seen as unfairly surprising or prejudicial. *Id.* In this case, we find the testimony to be within the broad scope of the expert's report and as fair rebuttal, which could not be viewed as surprising or prejudicial to Appellants. Thus, we find no merit to this allegation of error.

¶ 18 For the forgoing reasons we vacate the judgment entered in this matter and remand this case for a new trial in accordance with this opinion. Jurisdiction relinquished.

¶ 19 President Judge Emeritus CIRILLO filed a Dissenting Statement.

CIRILLO, President Judge Emeritus, dissenting:

¶ 1 Because the effect of the majority's decision to vacate and remand the instant case for a new trial impermissibly expands the informed consent doctrine beyond its traditional and fundamental roots, I must respectfully dissent.

> The goal of the informed consent doctrine is to provide the patient with material information which is necessary to determine whether or not to proceed with the surgical procedure. *Sinclair v. Block*, 534 Pa. 563, 570, 633 A.2d 1137, 1140 (1993). If this vital information regarding risks, complications, and alternatives to surgery, which a reasonable person in the patient's condition would have considered significant, is not

---

**2.** Because of our resolution of this issue, we need not reach the other issues presented in

support of Appellants' informed consent claim.

disclosed to the patient, the surgeon is held liable. *SeeGouse [v. Cassel*, 532 Pa. 197, 202, 615 A.2d 331, 333 (1992) ].

*Rowinsky v. Sperling*, 452 Pa.Super. 215, 681 A.2d 785 (1996) (Cirillo, P.J.E.).

¶ 2 In *Kaskie v. Wright*, 403 Pa.Super. 334, 589 A.2d 213 (1991), our court was faced with the issue of whether the doctrine of informed consent can be expanded to include information other than that which concerns medical treatment by surgical procedure. Specifically, the plaintiffs, parents of their deceased minor son, brought an action against the surgeon who operated on their son. The basis of the plaintiffs' complaint centered around the fact that they were not informed prior to surgery that the surgeon was both an alcoholic and was unlicensed to practice medicine in the Commonwealth of Pennsylvania. The *Kaskie* court refused to find that the plaintiffs made out a case of lack of informed consent where the personal weaknesses and professional credentials of the surgeon operating on their son were not disclosed. Rather, the court stated:

[T]here is no allegation here that appellants were uninformed about the particular procedures their son underwent irrespective of the surgeon performing them. We too refuse to expand the informed consent doctrine to include matters not specifically germane to surgical or operative treatment.

*Id.* at 216–17.

¶ 3 The majority believes its decision today is consistent with the ruling in *Kaskie*. Specifically, the majority states:

The court [in *Kaskie* ] considered this claim in view of the defendant's statute of limitations defense but in so doing commented that it refused to expand the doctrine of informed consent to absent information which consists of facts personal to the treating physician. Our ruling does not differ with these comments. It is not necessary in every case for a physician to disclose matters such as experience, credentials or any personal problems. **However, where a patient seeks to discover this information by asking the physician these direct questions, that patient deems such information important in the very personal decision of which physician to choose, and a physician who obtains "consent" by providing misinformation, does not have the true consent of the patient.**

¶ 4 The trial court's holding carves out an exception to the informed consent doctrine that effectively redefines a "reasonable patient" and, as a result, dilutes the jury's function by virtue of the verdict being vacated on such evidentiary grounds. *See Southard v. Temple University Hospital*, 731 A.2d 603 (Pa.Super.1999) ("Generally, it is the fact finder who determines whether information is material in an informed consent action."); *Sagala v. Tavares*, 367 Pa.Super. 573, 533 A.2d 165, 168 (1987) ("the determination of what a reasonable patient would do or consider significant under certain circumstances is for the jury to decide.").

¶ 5 A physician's personal experience with regard to having performed a certain operative procedure is certainly an important decision. However, such a consideration is not "germane to surgical or operative treatment," *Kaskie, supra* at 217, and, therefore, is not properly classified as a basis for an "informed consent" cases. *See Southard, supra* at 612 n. 13 ("the personal characteristics of a particular physician are only tangential to a surgical procedure."). Rather, such claim is more properly rooted in a negligence or intentional misrepresentation action.

¶ 6 Accordingly, I would affirm the verdict in favor of Appellees where such excluded information does not concern the risks, complications, and alternatives to surgery, and, therefore, is not a factor in the determination of whether a patient has given his or her informed consent for a surgical procedure.