771 A.2d 1255

**Cloma E. DUTTRY and Alvin Duttry, Appellees,**

v.

**Lewis T. PATTERSON, M.D., Patterson Surgical Associates and Polyclinic Medical Center, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 2000.

Decided May 22, 2001.

Nigro, J., filed dissenting opinion.

132

Linda S. Porr Sweeney, Lancaster, for Lewis T. Patterson and Patterson Surgical Associates.

Richard H. Wix, for Cloma Duttry.

Before Flaherty, C.J., Zappala, Cappy, Castille, Nigro, Newman, Saylor, JJ.

## OPINION

CAPPY, Justice.

We granted allocatur in this matter to determine whether the Superior Court below impermissibly extended the scope of the doctrine of informed consent. We conclude that it did, and therefore reverse.

In February of 1989, Cloma Duttry ("Duttry") was diagnosed with esophageal cancer. She consulted with Lewis T. Patterson, M.D. ("Patterson") regarding whether she needed surgery to treat her cancer. During this consultation, Duttry claims that she questioned Patterson about his experience in performing the type of operation he recommended. Patterson allegedly told Duttry that he had performed this particular procedure approximately once every month. Duttry ultimately consented to have the surgery performed by Patterson.

On June 5, 1989, Patterson performed the surgery; the surgery involved resection of portions of Duttry's esophagus and stomach. Three days after surgery, a leak developed at the site of the surgery. The leak eventually worsened and became a rupture. Because of the rupture, Duttry underwent emergency surgery.

Duttry and her husband (collectively, Appellees) filed suit against Patterson, Patterson Associates, and the Polyclinic Medical Center (collectively, Appellants), raising claims of medical malpractice and lack of informed consent. Appellees contended that Duttry now has adult respiratory disease syndrome and permanent damage to her lungs as a result of complications arising out of the rupture. Furthermore, they claimed that because of these physical problems, Duttry is unable to work.

At trial, Appellees sought to introduce evidence establishing that Patterson had performed the type of surgery which he had performed on Duttry only nine times in the preceding five years, a frequency far below the once a month figure he allegedly gave Duttry. Appellees contended that such evidence was relevant to the informed consent claim.

The trial court ruled that this evidence was inadmissible because it was not relevant to the issue of informed consent. It reasoned that the only information that a physician must impart to a patient to obtain informed consent is information relative to the risks of the procedure itself. The trial court therefore concluded that as information regarding the personal skills and abilities of the physician is not relevant to

understanding the risks of the procedure itself, then such information need not be conveyed in order to deem the patient's consent as being informed.

The jury returned a verdict in favor of Appellants. After denial of their post-trial motions, Appellees appealed. A divided panel of the Superior Court vacated and remanded for a new trial. *Duttry v. Patterson,* 741 A.2d 199 (Pa.Super.Ct.1999). The majority found that evidence relating to Patterson's experience in performing this particular type of surgery, and his alleged misrepresentations to Duttry, was relevant to the issue of informed consent. The majority noted that because of its resolution of the informed consent issue, it need not resolve other issues Appellees presented in support of the informed consent claim.

President Judge Emeritus Cirillo dissented. Judge Cirillo expressed the belief that only information relative to the procedure itself need be imparted in order to obtain the patient's informed consent; he posited that information concerning a physician's personal experience is irrelevant to an informed consent claim.

Appellants then filed a Petition for Allowance of Appeal with this court and we granted *allocatur.* For the reasons that follow, we now reverse.

The question with which we are presented is whether the Superior Court erred as a matter of law when it determined that information concerning a surgeon's personal qualifications and experience is relevant to an informed consent claim. As with all questions of law, our review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167 (1995).

The informed consent doctrine requires physicians to provide patients with "material information necessary to determine whether to proceed with the surgical or operative procedure or to remain in the present condition." *Sinclair by Sinclair v. Block,* 534 Pa. 563, 633 A.2d 1137, 1140 (1993). We have on several occasions defined the nature of this "material information". We have stated that the information provided

by a physician must give the patient "a true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results." *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663, 674 (1966). Thus, a physician must "advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation." *Gouse v. Cassel,* 532 Pa. 197, 615 A.2d 331, 334 (1992). A claim that a physician failed to obtain the patient's informed consent sounds in battery. *Id.; see also Morgan v. MacPhail,* 550 Pa. 202, 704 A.2d 617 (1997).[1]

In addressing this issue, the Superior Court found it critical that Patterson's alleged misinformation was given in response to a specific question posed by Duttry. The majority held that where a patient requests information regarding the physician's experience, then the physician must answer that question accurately in order to obtain the patient's informed consent.

The majority *sub silentio* recognized that its own decision in *Kaskie v. Wright,* 403 Pa.Super. 334, 589 A.2d 213 (1991) seemingly would militate a different result. In *Kaskie,* the Superior Court held that evidence regarding characteristics particular to the surgeon, rather than information concerning the procedure itself, was irrelevant to an informed consent claim. The *Kaskie* court reasoned that to "expand the informed consent doctrine to include matters not specifically germane to surgical or operative treatment[, to include] . . . facts personal to the treating physician, extends the doctrine into realms well beyond its original boundaries." *Id.* at 217. The Superior Court attempted to distinguish the matter *sub judice* from *Kaskie* by emphasizing that Duttry had specifically requested information regarding Patterson's experience; in

1. As noted by Appellants and *amicus curiae* Pennsylvania Medical Society, the legislature recently codified the law of informed consent. *See* 40 P.S. § 1301. 811–A (effective January 25, 1997). That statute is inapplicable to the matter *sub judice* as it became effective long after Duttry's surgery was performed.

*Kaskie,* however, the physician was not asked a question regarding his personal competency, but rather merely refrained from divulging this information. Thus, the majority of the panel below apparently viewed information concerning a physician's experience as being material to an informed consent claim only where the particular patient poses specific questions regarding that experience.

We are unpersuaded by the Superior Court's reasoning. The expansive approach taken by the Superior Court below is in opposition to this commonwealth's traditional view that the doctrine of informed consent is a limited one. We have historically demanded that a physician acquaint the patient only with "the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results." *Gray,* 223 A.2d at 674. The requirement of *Gray* is not a broad one; it clearly focuses on imparting information relative only to the surgery itself. In contrast, in neither *Gray* nor its progeny did we intimate that personal attributes or experience of the physician are relevant to an informed consent claim. Thus, we hold that evidence of a physician's personal characteristics and experience is irrelevant to an informed consent claim; such a holding is more in keeping with our case law than the approach taken by the Superior Court.

Furthermore, we note that this holding does not shift depending upon whether a patient inquires as to the physician's experience. We find the Superior Court's rationale that evidence of the physician's personal characteristics is relevant to an informed consent claim whenever the particular patient requests such information to be highly problematic. The Superior Court's reasoning on this point is divorced from the fundamental principle of the informed consent doctrine that information is material to the procedure at hand, and therefore must be divulged in order to obtain the patient's informed consent, if a *reasonable person* would wish to know it. *Gouse, supra.* This is an objective, rather than subjective, analysis;

its calculus does not shift depending on how inquisitive or passive the particular patient is.

Based on the foregoing, we hold that information personal to the physician, whether solicited by the patient or not, is irrelevant to the doctrine of informed consent.[2] Our holding should not, however, be read to stand for the proposition that a physician who misleads a patient is immune from suit. Rather, we are merely stating that the doctrine of informed consent is not the legal panacea for all damages arising out of any type of malfeasance by a physician. Nor do we see a need to expand this doctrine into a catchall theory of recovery since other causes of action provide avenues for redress to the injured patient. For example, it is conceivable that a physician's lack of experience in performing an operation would support a plaintiff's case in negligence. *See Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968). Also, in situations such as the one presented *sub judice,* in which the physician allegedly provides inaccurate information regarding his experience in performing a procedure, the plaintiff may have a cause of action for misrepresentation. *See Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555 (1999).

For the foregoing reasons, we reverse the order of the Superior Court and remand the matter for the Superior

---

2. We realize that some of our sister states have expanded the concepts of the doctrine of informed consent so that they require a physician to inform the patient not only of the risks of the procedure itself, but of personal attributes, interests and experience of the physician. *See, e.g., Moore v. Regents of University of California,* 51 Cal.3d 120, 271 Cal. Rptr. 146, 793 P.2d 479 (1990) (to obtain the patient's informed consent, the physician must reveal any potential conflicts of interest); *Johnson v. Kokemoor,* 199 Wis.2d 615, 545 N.W.2d 495 (1996) (physician must reveal physical impairment and lack of experience to obtain the patient's informed consent). While we acknowledge that the learned high courts of some of our sister states have broadened their concept of the informed consent doctrine, we see no compelling reason to follow a similar course. As discussed *infra,* plaintiffs such as Appellees have recourse against allegedly inexperienced and deceptive physicians via other causes of action. We see no need to alter this commonwealth's definition of informed consent in order to provide what will often be a redundant cause of action. *Cf. MacPhail, supra* (rejection of request to expand doctrine of informed consent beyond its traditional boundaries).

Court's consideration of the remaining claims raised by Appellees in their appeal to that court.

NIGRO, Justice, Dissenting.

I respectfully dissent from the majority opinion since I fail to see how a patient who specifically asks her physician how many times he has performed a surgical procedure can be said to have given her informed consent to surgery when the physician misleads the patient by grossly exaggerating his experience. As the majority notes, the informed consent doctrine requires a physician to "advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation." *Gouse v. Cassel,* 532 Pa. 197, 615 A.2d 331, 334 (1992). In my view, evidence that Dr. Patterson misled Cloma Duttry by telling her that he had performed the surgery at issue once a month for five years, *i.e.,* sixty times, when in reality he had performed it only nine times, is clearly a material fact that a reasonable person would consider significant in deciding whether to undergo surgery. Accordingly, I would affirm the Superior Court's order granting a new trial.