J-A06035-14 & J-A06036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NOREEN LEWIS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TOYOTA MOTOR CORP., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TOYOTA MOTOR SALES USA, INC., TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA INDUSTRIES NORTH AMERICA, INC., PHILLY CAR SHARE, INC., MCMAHON LEASING, INC., CENTRAL CITY TOYOTA, TOYOTA ARDMORE AND M & B PAUL, INC. | |
| APPEAL OF: M & B PAUL, INC., D/B/A ARDMORE TOYOTA AND CENTRAL CITY TOYOTA (IDENTIFIED IN THE CAPTION AS CENTRAL CITY TOYOTA, TOYOTA ARDMORE AND M & B PAUL, INC.) | |
| | No. 1642 EDA 2013 |

Appeal from the Judgment Entered May 15, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2010, 001088

*****

| | |
|---|---|
| EVELYN LEWIS, LASHONA LEWIS, A MINOR BY HER PARENT AND NATURAL GUARDIAN, EVELYN LEWIS AND EVELYN LEWIS IN HER OWN RIGHT, BRIDGET MCGINCHEY, A MINOR BY HER LEGAL GUARDIAN, EVELYN LEWIS AND EVELYN LEWIS IN HER OWN RIGHT, BRYANNA MCGINCHEY, A MINOR BY HER LEGAL GUARDIAN, EVELYN LEWIS AND EVELYN LEWIS IN HER OWN RIGHT, MICHAEL | IN THE SUPERIOR COURT OF PENNSYLVANIA |

LEWIS, A MINOR BY HIS LEGAL
GUARDIAN, AARON LEWIS AND AARON
LEWIS IN  HIS OWN RIGHT AND
LAVINIA LEWIS

v.

TOYOTA MOTOR CORP., TOYOTA MOTOR
ENGINEERING & MANUFACTURING
NORTH AMERICA, INC., TOYOTA MOTOR
SALES USA, INC., TOYOTA MOTOR
NORTH AMERICA, INC., TOYOTA
INDUSTRIES NORTH AMERICA, INC.,
PHILLY CAR SHARE, INC., MCMAHON
LEASING, INC., CENTRAL CITY TOYOTA,
TOYOTA ARDMORE AND M & B PAUL,
INC., AND NOREEN LEWIS

APPEAL OF: M & B PAUL, INC., D/B/A
ARDMORE TOYOTA AND CENTRAL CITY
TOYOTA (IDENTIFIED IN THE CAPTION
AS CENTRAL CITY TOYOTA, TOYOTA
ARDMORE AND M & B PAUL, INC.)

No. 1643 EDA 2013

Appeal from the Judgment Entered May 15, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2010, 001119

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.                    **FILED OCTOBER 02, 2014**

M & B Paul, Inc., d/b/a Ardmore Toyota and Central City Toyota

(collectively "CCT"), appeals from the judgment entered May 15, 2013, after

---

[*] Former Justice specially assigned to the Superior Court.

a jury returned a verdict in favor of Dr. Noreen Lewis and five other plaintiffs who had been involved in a one-vehicle automobile accident. After careful review of the law and the record, we affirm.

The trial court succinctly stated the facts surrounding the accident as follows:

> On March 8, 2008, Noreen Lewis was traveling in the right lane on New York's route Seventeen (17) west headed towards Vestal, [New York]. Ms. Lewis was driving a Toyota Sienna minivan that she had rented from Philly Car Share. In the vehicle with her was her mother, Evelyn Lewis, her son Michael Lewis, and her three (3) sisters, Lashona Lewis, Bryanna McGinchey and Bridget McGinchey. As Ms. Lewis was driving she heard a "jerk" and then the steering wheel of the vehicle locked and became immovable. As she frantically attempted to turn the wheel to no avail, the rear of the vehicle began to drift to the left. It was at that point that she tried to stop the vehicle by hitting the brake, however, that failed and the vehicle proceeded to go off the road to the left and down into a ravine. The vehicle came to a stop on its roof after rolling over multiple times.
>
> The passengers of the vehicle were removed from the vehicle by the emergency personnel that had arrived on the scene. Ms. Lewis was then transported to Johnson City Memorial Hospital where she stayed for three (3) weeks. She was then transferred to Binghamton Memorial Hospital in Binghamton, New York, where she stayed for an additional three (3) weeks. As a result of the accident Ms. Lewis suffered a concussion, a fractured temporal bone, lacerations to her face, ear and scalp. She also had compression factures [sic] with a disc bulging in her neck, four (4) rib fractures, a lung contusion, heart contusion, fractured lower back vertebrae, multiple ripped thigh muscles and a stretch traction injury in her left brachial plexus which led to severe pain in her left arm.
>
> Ms. Lewis's Mother, Evelyn Lewis, suffered a cut to her head, a broken wrist, a punctured lung and pain in her hip.

She was treated in the hospital where she remained for approximately two (2) weeks. Bryanna McGinchey suffered a broken femur. Bridget McGinchey suffered a broken right elbow. Lashona and Michael Lewis both complained of back and neck pain.

Trial Court Opinion, 7/23/13, at 2-3 (footnotes omitted).

On March 5, 2010, Dr. Lewis filed a complaint for negligence, strict liability, and breach of warranty in the Court of Common Pleas of Philadelphia County[1] against CCT, Philly Car Share, Inc., McMahon Leasing, Inc., and multiple other entities, including Toyota Motor Corporation, Toyota Motor Engineering & Manufacturing North America Inc., and Toyota Motor Sales, U.S.A. (collectively "Toyota").[2] On the same day, all of the other passengers also filed an action against the same defendants in the Court of Common Pleas of Philadelphia County.[3] Dr. Lewis was also named as a defendant in the action brought by the passengers. Thereafter, amended complaints were filed in both actions. The amended complaints alleged that the accident was caused due to defects in Toyota's design or manufacture of

---

[1] Civil Action No. 1088, March Term 2010.

[2] Toyota Motor North America, Inc. and Toyota Industries North America, Inc. were also named as defendants. Both parties were dismissed prior to trial by order dated January 2, 2013.

[3] Civil Action No. 1119, March Term 2010. Dr. Lewis' daughter, Lavinia Lewis, was a passenger and was initially a plaintiff in this case. Her claims were dismissed prior to trial by order dated January 31, 2013.

the minivan and alleged negligence based upon CCT's failure to properly maintain the minivan.

Although the amended complaints included claims of both product defects and negligence, CCT tendered its defense to Toyota under the assumption that Plaintiffs' case would focus on the alleged product defects. Toyota accepted CCT's tender of defense and agreed to its request for indemnification. CCT's counsel withdrew his appearance on January 10, 2011, prior to the close of pleadings and before significant discovery had taken place, including inspection of the minivan. Toyota's counsel entered their appearances on behalf of CCT.

Discovery closed on July 2, 2012. Plaintiffs' deadline to produce expert reports was August 6, 2012, by which date Plaintiffs produced liability reports from accident reconstructionist Frank M. Costanzo, mechanic Dennis A. DeWane, Sr., and metallurgist David P. Pope, Ph.D. These reports focused on negligence claims relating to CCT's maintenance of the minivan. Because the Plaintiffs' expert reports focused on negligence rather than product defects, Toyota re-tendered the defense of CCT, and CCT's counsel re-entered his appearance on August 17, 2012. Defense expert reports were due September 4, 2012, by which date Toyota produced several liability reports on behalf of itself and CCT.[4] However, none of the

---

[4] Toyota also moved for summary judgment, which was granted by order dated December 18, 2012.

defendants had retained a mechanic expert, and CCT was unable to retain one and produce a related expert report by the deadline. Thus, no report was produced by a mechanic or any other expert in response to the report prepared by Plaintiffs' mechanic expert regarding CCT's allegedly negligent inspection and maintenance of the minivan.

CCT filed a motion for extraordinary relief, requesting an extension to secure a mechanic expert and report addressing Plaintiffs' negligence theory. The trial court denied this motion by order dated September 9, 2012. CCT eventually retained mechanic expert Timothy J. Hilsey. While Hilsey was unable to inspect the minivan,[5] he prepared a report, which CCT produced on January 18, 2013. Despite the production of the report well beyond the deadline for production of defense expert reports, the trial court permitted Hilsey to testify at trial because Plaintiffs had adequate opportunity to respond to his report.

Trial began on February 26, 2013. Plaintiffs argued that the steering wheel locked at the time of the accident due to a separation of the right front ball joint that occurred prior to the accident. Plaintiffs asserted that

---

[5] CCT and Toyota both had agreed to use Lee Carr as an expert witness, and Carr had previously inspected the minivan, which was under Plaintiffs' control. After CCT retained Hilsey, CCT requested permission from Plaintiffs' counsel so that Hilsey could conduct his own inspection of the minivan. Plaintiffs' counsel refused, and CCT filed a motion with the trial court to allow a visual inspection of the minivan. This motion was denied by order dated December 6, 2012.

the ball joint became separated because CCT improperly inspected the minivan 97 days before Dr. Lewis rented it, since CCT failed to follow the service method set forth in the 2006 Toyota Sienna maintenance manual. Plaintiffs argued that this allegedly negligent inspection was a direct cause of the accident.

On March 19, 2013, the jury returned a verdict in favor of Dr. Lewis and against CCT, only, in the total amount of $11,369,500. The jury also returned a verdict in favor of the passenger Plaintiffs and against CCT, only, in the total amount of $4,254,255. CCT filed motions for post-trial relief in both actions, which were denied by orders dated April 19, 2013. Judgment was entered on May 15, 2013. This timely appeal followed.

CCT raises the following issues, *verbatim*, on appeal:

> 1. Did the trial court commit prejudicial error in limiting the testimony of the Defendants/Appellants' automotive mechanic expert, Timothy J. Hilsey, based on his alleged lack of qualifications, where he was eminently qualified and had virtually the same qualifications as Plaintiffs' automotive expert?
>
> 2. Did the trial court commit prejudicial error in prohibiting Defendants/Appellants' counsel from questioning their automotive mechanic expert, Timothy J. Hilsey, on redirect examination about an additional page from the subject vehicle's maintenance manual where that additional page was highly relevant to the case and Plaintiffs opened the door to its use?
>
> 3. Did the trial court commit prejudicial error in precluding testimony from Defendants/Appellants' accident reconstruction expert, Lee Carr, as beyond the scope of his pre-trial reports where such testimony was properly responsive to other expert testimony presented at trial?

4. Did the trial court commit prejudicial error in precluding certain portions of New York State Trooper Christopher Condon's deposition testimony from being read to the jury as outside the scope of his post-accident report where Trooper Condon was an eyewitness to the post-accident scene and thus should have been permitted to testify via deposition to what he actually saw, regardless of what his post-accident report said?

5. Did the trial court commit prejudicial error in denying Defendants/Appellants' timely and specific mistrial motion and subsequent motion for reconsideration following the repeated allegations of Plaintiffs' lead counsel during his cross examination of defense mechanical engineering expert, Michael James, that former defendant Toyota had "lost" evidence while conducting a vehicle inspection in a wholly unrelated and irrelevant California case?

6. Did the trial court commit prejudicial error in denying Defendants/Appellants' requests for extension of time to complete discovery and in denying its later requests to conduct a post-discovery inspection of the minivan where Plaintiffs' own mechanic expert conducted a post-discovery inspection well after discovery had closed and the denial of these requests resulted in the sharp limitation of Defendants/Appellants' mechanic expert's testimony at trial?

Brief for Appellants, at 4-5 (footnote omitted).

The six issues CCT raises on appeal assert that the trial court made prejudicial errors during the pre-trial, trial, and post-trial proceedings in the instant matter. On this basis, CCT argues that it is entitled to a new trial. The grant of a new trial involves:

a two-step process that a trial court must follow . . . . First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis

for granting a new trial . . . . The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000) (citations omitted). Thus, we consider whether the trial court committed any error, and, if so, whether the error was harmless or whether Appellants suffered any prejudice.

In its first four issues, CCT asserts that the trial court erred in limiting certain witness testimony. The standard of review of a trial court's admission or exclusion of evidence, including the testimony of expert witnesses, is well-established and narrow:

These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Jacobs v. Chatwani*, 922 A.2d 950, 960 (Pa. Super. 2007). "Generally, all relevant evidence is admissible." *Slusaw v. Hoffman*, 861 A.2d 269, 274 (Pa. Super. 2004); Pa.R.E. 402. "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

The admission of expert testimony is governed by Pennsylvania Rule of Evidence 702:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702. In determining whether an expert witness is qualified to provide opinion testimony regarding a particular issue, the reviewing court must determine whether that witness has sufficient skill, knowledge or experience, such that the opinion will in all probability aid the trier of fact in determining the truth. *Wexler v. Hecht*, 847 A.2d 95, 99 (Pa. Super. 2005). If the reviewing court determines that the witness does not have such skill, knowledge or experience, it may refuse to permit such testimony. *Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528-29 (Pa. 1995).

In its first issue, CCT argues that expert witness Timothy J. Hilsey should have been permitted to offer his opinion that the separation of the ball joint did not cause the accident, since he would have "expected" to see more scratches on the wheel if the separation had occurred prior to the vehicle rolling over multiple times. CCT asserts that Hilsey was qualified to offer such testimony based on his education in the automotive field, his experience as a parts and service director at a Cadillac dealership, and his

certification as a state emissions mechanic who has performed a large number of Pennsylvania state vehicle inspections.

However, Hilsey was presented as an automotive mechanic, and, accordingly, the trial court qualified him only as an automotive mechanic expert. Additionally, Hilsey did not inspect the vehicle involved in the instant accident. For these reasons, the trial court found that Hilsey's testimony regarding the speed of the car, the movement the tire made, or damage to the vehicle would have been have been purely speculative and outside his realm of expertise. Thus, the trial court properly determined that Hilsey "was limited to the bounds of that of an automotive mechanic[,] not that of a mechanical engineer or any other accident reconstruction expert." Trial Court Opinion, 7/23/13, at 7. *See Dambacher v. Mallis*, 485 A.2d 408, 416-20 (Pa. Super. 1984) (automobile mechanic with no engineering experience or training not qualified to render opinions on vehicle dynamics).

CCT also claims that Hilsey should have been permitted to give his opinion regarding damage to the vehicle because Plaintiffs' automotive mechanic expert, Dennis A. DeWane, Sr., was permitted to do so and both experts allegedly have similar qualifications. However, when DeWane attempted to answer a question about whether markings on the right front tire would be consistent with ball joint separation before the vehicle lost control or after, CCT's counsel objected to the question as being beyond the scope of his expertise. This objection was sustained. Moreover, DeWane had qualifications that Hilsey did not possess, including experience in

accident reconstruction and previous qualification as an expert in accident reconstruction, vehicle failure, and parts failure. Therefore, the assertion that Hilsey was treated prejudicially is without merit.

Assuming, *arguendo*, that the trial court should have qualified Hilsey to testify to the damage he would have expected to see on the minivan, it is harmless error that he was precluded from doing so. Two of CCT's other experts, Lee Carr and Mike James, were qualified and provided testimony regarding the ball joint, forces of separation, accident dynamics, and damage to the vehicle. Thus, the trial court's limitation of the scope of Hilsey's expert testimony did not constitute a prejudicial error justifying a new trial. **Jacobs**, **supra**.

The second issue CCT raises on appeal also involves Hilsey's testimony. CCT claims that the trial court abused its discretion by precluding Hilsey from testifying about a particular page from the Toyota Sienna maintenance manual during redirect examination. At trial, Plaintiffs argued that CCT's failure to follow the recommended procedure in that manual resulted in failure to discover the compromised right ball joint. While questioning DeWane on direct examination, Plaintiffs used a page from the maintenance manual to demonstrate that CCT had not followed the recommended procedure to inspect the front end of the minivan. Plaintiffs referred to the page again, while cross-examining Hilsey, to verify that CCT did not follow the inspection procedure it contained. Then, during Hilsey's

redirect examination, CCT sought to introduce an additional page of the manual to suggest that the procedure outlined was optional.

The trial court did not permit the additional page of the maintenance manual to be introduced because it had been never been mentioned previously and was beyond the scope of direct and cross examination. This was appropriate, since "[t]he scope of redirect examination is largely within the discretion of the trial court." ***Commonwealth v. Dreibelbis***, 426 A.2d 111, 117 (Pa. 1981). CCT asserts that the separate page should have been introduced based upon Pennsylvania Rule of Evidence 106, which states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part— or any other writing or recorded statement—that in fairness ought to be considered at the same time." Pa.R.E. 106.

However, the page CCT sought to introduce indicated that the service method in the manual is "very effective to perform repair and service" and provides warnings in the event other methods are used. Defendants' Exhibit 24. Even if this page demonstrates that other procedures might exist for inspection purposes, the information does not detract from Plaintiffs' argument that the manual contains the recommended procedure. Indeed, the page does nothing but bolster Plaintiffs' position. Thus, the additional page CCT sought to introduce did not need to be considered in order to be fair to CCT, and the trial court properly denied its admission into evidence. ***Jacobs***, ***supra***.

- 13 -

In its third issue, CCT asserts that the trial court erred in limiting the testimony of expert witness Lee Carr. The trial court prevented Carr from testifying to matters the court considered to be outside the scope of his previously-served expert report. Pennsylvania Rule of Civil Procedure 4003.5 makes clear that the expert's testimony at trial is limited to the fair scope of his deposition testimony or pre-trial report:

> To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings . . . the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto.

Pa.R.C.P. 4003.5(c). However,

> it is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, "the substance of the facts and opinions to which the expert is expected to testify" is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. (Citations omitted).

> In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word 'fair.' The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Tiburzio-Kelly v. Montgomery*, 681 A.2d 757, 764-65 (Pa. Super. 1996) (quoting *Wilkes-Barre Iron & Wire Works, Inc. v. Pargas of Wilkes-Barre, Inc.*, 502 A.2d 210, 212-13 (Pa. Super. 1985)) (emphasis in original). Despite the language of Rule 4003.5, "[w]here an expert's fact/opinion testimony is fair rebuttal to the other party's expert testimony, it cannot be seen as unfairly surprising or prejudicial." *Foflygen v. Allegheny Gen. Hosp.*, 723 A.2d 705, 710 (Pa. Super. 1999) (citation omitted).

Instantly, the trial court determined, and CCT essentially admits, that Carr's proposed testimony was outside the scope of his pre-trial report. *See* Brief for Appellants, at 33-34 (stating that Carr sought to address theories for the first time in response to DeWane's opinions). In response to a motion *in limine* filed by Dr. Lewis seeking to preclude Carr's testimony, CCT even asserted that Carr's report provides "a complete expression of Dr. Carr's opinions." Defendants' Response in Opposition to Motion *in Limine* Seeking to Preclude Testimony of Lee Carr, 2/5/13, at ¶ 9. However, CCT argues that Carr's testimony should have been admissible since he was prepared to testify in response to Plaintiffs' expert witness, DeWane. Thus, we must consider whether the proposed testimony would have been "fair rebuttal" to DeWane's testimony.

The theories Carr intended to advance as rebuttal to DeWane's testimony included the following:

(1) the damage to the right front ball joint assembly, including the control arm, was not consistent with a pre-accident ball joint separation which occurred at highways speed because, if the ball joint separated at speed, the arm would "flail" around at a wide angle and incur specific damage markings which were not found on the minivan;

(2) a pre-accident ball joint separation would make noise;

(3) the forces exerted on the ball joint from "simply moving over asphalt covered roadways would be insufficient to separate the ball joint;" and,

(4) an inspection procedure that puts a car on a lift does not invalidate the possibility of discovering free play in a ball joint.

Brief for Appellants, at 31. DeWane testified on each of these subjects. He described the damage that occurred to the right front ball joint assembly, indicated that a separation under normal driving conditions does not always make noise, described the conditions necessary to separate a ball joint, and stated that using a lift can preclude the detection of a defective ball joint. DeWane's pre-trial report also contained these opinions, which gave CCT notice of them prior to trial. Carr failed to include the specific responses listed above in his pre-trial report. Nevertheless, "fair rebuttal" is permissible. The connotation of fair in this context is that the testimony is not surprising or prejudicial. With an exception for Carr's description of the control arm "flailing,"[6] none of the counter-testimony Carr was prepared to

_____

[6] The trial court precluded testimony specifically about the control arm "flailing" as being beyond the scope of Carr's pre-trial report. Even though Carr's testimony was responsive to other expert testimony, this particular
*(Footnote Continued Next Page)*

- 16 -

provide would have been surprising, even though it was not included in his pre-trial report. Thus, the trial court erred in limiting Carr's testimony on these issues. *Foflygen*, *supra*.

Although the trial court should have permitted Carr to testify in response to DeWane's testimony, its failure to do so was harmless error. Most of the substance of Carr's proposed testimony was admitted into evidence, either through Carr's testimony, or the testimony of CCT's other experts. Carr himself testified to the expected damage to the ball joint assembly. N.T. Trial P.M., 3/12/13, at 107. James testified that the forces that exist in driving down the road under normal conditions would be inadequate to cause a ball joint separation. N.T. Trial P.M., 3/13/13, at 11. Hilsey testified that an inspection method using a lift permits a mechanic to discover if a ball joint is compromised. N.T. Trial P.M., 3/8/13, at 97. As to the noise that a separated ball joint would have made, CCT was not directly precluded from introducing this evidence. Carr was prevented from discussing "flailing" of the control arm, which would have caused the noise. At sidebar, CCT's counsel indicated Carr's testimony about "flailing" would be relevant for the purposes of damage and noise. CCT stopped the line of

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

issue would not have been "fair rebuttal." As the trial court noted, Carr's discussion about the control arm "flailing" would have required a scientific explanation, which was not included in Carr's report. Carr's testimony on this particular point would have been unanticipated. Thus, the trial court correctly prevented Carr from providing this testimony. *See* N.T. Trial A.M., 3/12/13, at 120-24.

questioning since the trial court would not permit Carr to discuss the motion of the control arm. However, CCT's counsel never actually asked Carr a question about noise. Because the trial court never ruled on whether Carr could testify about noise, the court could not have erred on this point. Thus, the jury heard the evidence Carr would have provided, and the trial court's error in precluding certain portions of his proposed testimony was harmless. *Harman*, *supra*.

In its fourth issue, CCT asserts that the trial court erred in precluding New York State Trooper Christopher Condon's deposition testimony relating to his observation of markings on the road near the scene of the accident. Trooper Condon reported to the scene of the accident shortly after it occurred. Near the accident scene, Trooper Condon observed skid marks created by a tire moving laterally, which he referred to as "yaw marks." However, Trooper Condon did not observe the accident while it occurred and did not mention the marks in his post-accident report. Indeed, Trooper Condon was testifying as a fact witness. He was not an expert witness qualified to provide opinion testimony, as he did not have any specific accident reconstruction training and did not take any measurements, photographs, or video of the accident scene.

Since Trooper Condon did not observe the accident and he was not qualified to provide opinion testimony, his proposed testimony linking the yaw marks to the accident would have been purely speculative. While yaw marks could be relevant in the instant matter, the speculative nature of

- 18 -

Condon's testimony makes his observation impermissible. The testimony may also have been prejudicial and could have confused the issues because Trooper Condon had not mentioned the yaw marks in his report and he did not testify at trial. As the trial court noted, "Plaintiffs would have been placed in a position where they would have been unable to test the veracity of the testimony." Trial Court Opinion, 7/23/13, at 10 n.4. Thus, the trial court properly excluded Trooper Condon's deposition testimony regarding yaw marks and their relation to the accident. *Jacobs*, *supra*; Pa.R.E. 403.

In its fifth issue, CCT argues that the trial court erred in denying CCT's motion for a mistrial and in denying CCT's subsequent motion for reconsideration. CCT's mistrial motion was based upon allegedly prejudicial references Toyota's counsel made to "lost" evidence in another case.

A mistrial should only be granted where the event is so inflammatory and prejudicial that it has undoubtedly influenced the jury and a fair trial cannot be held. *Commonwealth v. Brown*, 676 A.2d 1178, 1184 (Pa. 1996). "The decision to declare a mistrial rests within the sound discretion of the trial judge and we, as an appellate court will not reverse absent a flagrant abuse of discretion." *Commonwealth v. Gains*, 556 A.2d 870, 876 (Pa. Super. 1989) (citations omitted). "Whether a trial court has abused its discretion by refusing a motion for a mistrial must be determined by the circumstances under which the statement was made and the precautions taken to prevent the statement from having a prejudicial effect on the jury." *Dolan v. Carrier Corp.*, 623 A.2d 850, 853 (Pa. Super. 1993)

(citing **Clark v. Hoerner**, 525 A.2d 377 (Pa. Super. 1987)). An isolated reference to something questionable, to which a curative instruction is provided, is not a basis for the grant of a mistrial. **Commonwealth v. Jones**, 683 A.2d 1181, 1195 (Pa. 1996). Furthermore, jurors are presumed to follow instructions. **Commonwealth v. Cannon**, 22 A.3d 210 (Pa. 2011).

Toyota's counsel attempted to question CCT's engineering expert, Mike James, about evidence that allegedly had been lost in an unrelated California case in which James had served as an expert witness for Toyota. CCT moved for a mistrial, asserting that the attempt to question James was an attempt to prejudice the jury by implying that evidence had been "lost" in the instant matter. However, when Toyota's counsel tried to ask a question related to the California case, CCT objected to the line of questioning and the objection was sustained. The trial court also instructed the jury to disregard the question. At a later point, Toyota's counsel attempted to question James about an affidavit he wrote in the same California case. CCT again objected and the trial court sustained the objection. The trial judge once more specifically instructed the jury to disregard anything having to do with the California case. Because the jury is presumed to follow such instructions, and the jury did not actually hear any testimony related to the "lost" evidence, the trial court correctly determined that the questions Toyota's counsel attempted to ask did not have a prejudicial effect. Thus,

the trial court appropriately denied the motion for a mistrial. **Cannon**, **supra**.

In its sixth and final issue, CCT asserts that the trial court erred in refusing to extend discovery deadlines and refusing to allow CCT's counsel to conduct a post-discovery inspection of the minivan. CCT asserts that it was not clear that Plaintiffs would proceed to trial solely on a negligence theory, rather than a product defect theory, until Plaintiffs produced their expert reports. These reports were produced by the court-imposed deadline, after discovery had closed, on July 2, 2012. CCT had tendered its defense to Toyota under the assumption that Plaintiffs would advance their product defect theory. Regardless of the approach CCT believed Plaintiffs would take at trial, the amended complaints in this matter stated product defect claims **and** negligence claims. Plaintiffs did not surprise CCT with a last-minute theory of negligence.

Under the Pennsylvania Rules of Civil Procedure, a party's change of counsel shall not "delay any stage of litigation." Pa.R.C.P. 1012. Moreover, Philadelphia local rules provide:

> In order to prevent delay of the litigation, an attorney who enters an appearance for a party simultaneously with the withdrawal of appearance of prior counsel in an action shall be deemed to be available to try the case on the assigned hearing or trial date. The hearing or trial date will not be rescheduled due to the entry of appearance of new counsel of any party.

Phila. Civ. R. 1012.   Here, CCT was represented throughout this matter, either by Toyota's counsel or its own.   Further, inspections of the minivan occurred on multiple occasions during discovery, and CCT was represented during all of the inspections.   CCT urges that it is unfair that Hilsey could not inspect the minivan and then was precluded from testifying regarding issues where inspection would have been necessary.   Even if this argument were meritorious, CCT and Toyota both agreed to use Carr as an expert witness, and he inspected the minivan.   Ultimately, CCT was well aware of the negligence claims in this action and cannot blame Plaintiffs for its own failure to prepare adequately during discovery.   Accordingly, the trial court did not err or abuse its discretion in refusing to extend discovery deadlines or to permit an additional inspection of the minivan.   ***See Jefferson Bank v. Newton Associates***, 686 A.2d 834 (Pa. Super. 1996).

Following our review of the record, the briefs, and the relevant law, we find that the trial court did not err in refusing to grant a new trial.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2014

- 22 -